UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASTROPOWER LIQUIDATING TRUST, f/k/a ASTROPOWER, INC., <br><br> Plaintiff, <br><br> vs. <br><br> KPMG LLP, <br><br> Defendant. | Civil Action No. 06-469 (JJF) |

### DECLARATION OF CARL E. HERTRICH

I, CARL E. HERTRICH, hereby declare as follows:

1. My name is Carl E. Hertrich. I am a partner of KPMG LLP. I make this declaration based upon my personal knowledge.

2. The Engagement Letter dated January 30, 2003 and (a) attached to this declaration and (b) included in the Appendix to the Brief in Support of Defendant KPMG LLP's Motion to Dismiss is a true and correct copy of the Engagement Letter cited in ¶¶ 59-61 of the Amended Complaint in the above-captioned action.

I declare under penalty of perjury that the foregoing is true and corrected. Executed on 12/10/06.

_____
Carl E. Hertrich



1601 Market Street
Philadelphia, PA 19103-2499

Mr. Thomas J. Stiner
AstroPower, Inc.
300 Executive Drive
Newark, DE 19702

January 30, 2003

Dear Tom:

This letter will confirm our understanding of our engagement to provide professional services to AstroPower, Inc. and subsidiaries (the "Company").

**Audit Services**

We will issue a written report upon our audit of the consolidated balance sheets of AstroPower, Inc. and subsidiaries as of December 31, 2002 and 2001, the related consolidated statements of income and comprehensive income, stockholders' equity, and cash flows for each of the years in the three-year period ended December 31, 2002, and schedules supporting such financial statements, all of which are to be included in the annual report (Form 10-K) proposed to be filed by the Company under the Securities Exchange Act of 1934.

Should the Company wish to include or incorporate these consolidated financial statements and our report thereon by reference into a future filing under the Securities Act of 1933 or other offering document, we would consider our consent to the inclusion of our report and the terms thereof at that time.

We will conduct the audit in accordance with auditing standards generally accepted in the United States of America, with the objective of expressing an opinion as to whether the presentation of the consolidated financial statements, taken as a whole, conforms with accounting principles generally accepted in the United States of America. It should be understood that our report and the consolidated financial statements and schedules may be subject to review by the Securities and Exchange Commission staff and to the application by them of their interpretation of the relevant rules and regulations.

KPMG LLP. KPMG LLP, a U.S. limited liability partnership, is a member of KPMG International, a Swiss association.

A-5

Page 2

In conducting the audit, we will perform tests of the accounting records and such other procedures as we consider necessary in the circumstances to provide a reasonable basis for our opinion on the consolidated financial statements. We also will assess the accounting principles used and significant estimates made by management, and evaluate the overall consolidated financial statement presentation.

Our report will be addressed to the board of directors and stockholders of the Company and will be in a form that is in accordance with the published rules and regulations of the Securities and Exchange Commission. We can not provide assurance that an unqualified opinion will be rendered. Circumstances may arise in which it is necessary for us to modify our report or withdraw from the engagement. In such circumstances, our findings or reasons for withdrawal will be communicated to the audit committee.

We will read the other information in your annual report (Form 10-K) and consider whether such information, or the manner of its presentation, is materially inconsistent with information, or the manner of its presentation, appearing in the consolidated financial statements. However, our audit does not include the performance of procedures to corroborate such other information (including forward-looking statements).

The Company agrees that all records, documentation, and information we request in connection with our audit will be made available to us, that all material information will be disclosed to us, and that we will have the full cooperation of the Company's personnel. As required by auditing standards generally accepted in the United States of America, we will make specific inquiries of management about the representations embodied in the consolidated financial statements and the effectiveness of internal control, and obtain a representation letter from management about these matters. The responses to our inquiries, the written representations, and the results of audit tests, among other things, comprise the evidential matter we will rely upon in forming an opinion on the consolidated financial statements.

The management of the Company has responsibility for the consolidated financial statements and all representations contained therein. Management also is responsible for identifying and ensuring that the Company complies with laws and regulations applicable to its activities, for preventing and detecting fraud, for adopting sound accounting policies, and for establishing and maintaining effective internal control over financial reporting to maintain the reliability of the consolidated financial statements and to provide reasonable assurance against the possibility of misstatements that are material to the consolidated financial statements.

Our audit is planned and performed to obtain reasonable, but not absolute assurance about whether the consolidated financial statements are free of material misstatement, whether caused by error or fraud. Absolute assurance is not attainable because of the nature of audit evidence

Page 3

and the characteristics of fraud. Therefore, there is a risk that material errors, fraud (including fraud that may be an illegal act), and other illegal acts may exist and not be detected by an audit performed in accordance with auditing standards generally accepted in the United States of America. Also, an audit is not designed to detect matters that are immaterial to the consolidated financial statements.

To the extent that they come to our attention, we will inform management about any material errors and any instances of fraud or illegal acts. Further, to the extent that they come to our attention, we will inform the audit committee about fraud and illegal acts that involve senior management, fraud that in our judgment causes a material misstatement of the consolidated financial statements of the Company, and illegal acts, unless clearly inconsequential, that have not otherwise been communicated to the committee. In the case of illegal acts which in our judgment would have a material effect on the consolidated financial statements of the Company, we are also required to follow the procedures set forth in the Private Securities Litigation Reform Act of 1995, which under certain circumstances would require us to communicate our conclusions to the Securities and Exchange Commission.

Management is responsible for adjusting the consolidated financial statements to correct material misstatements and for affirming to the auditor in the representation letter that the effects of any uncorrected misstatements aggregated by the auditor during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the consolidated financial statements being reported upon taken as a whole.

In planning and performing our audit, we will consider the Company's internal control in order to determine the nature, timing and extent of our audit procedures for the purpose of expressing an opinion on the consolidated financial statements and not to provide assurance on internal control.

While we are not being engaged to report on the Company's internal control and are not obligated to search for reportable conditions, we will communicate reportable conditions to you to the extent they come to our attention. Reportable conditions are significant deficiencies in the design or operation of internal control which could adversely affect the organization's ability to record, process, summarize and report financial data consistent with the assertions of management in the consolidated financial statements. The definition of "reportable conditions" does not include potential future internal control problems, i.e., control problems coming to our attention that do not affect the preparation of consolidated financial statements for the period under audit.

Page 4

**Quarterly Review Services**

We will review the condensed consolidated balance sheets of the Company as of March 31, June 30, and September 30, 2002 and 2003, and the related condensed consolidated statements of income and comprehensive income, stockholders' equity, and cash flows for the quarterly and year-to-date periods then ended, which are to be included in the quarterly reports (Form 10-Q) proposed to be filed by the Company under the Securities Exchange Act of 1934. We will also review the selected quarterly financial data specified by Item 302 of Regulation S-K, which is required to be included in the annual report (Form 10-K) proposed to be filed by the Company under the Securities Exchange Act of 1934.

We will conduct our reviews in accordance with the professional standards set forth in Statement on Auditing Standards No. 71, as amended, issued by the American Institute of Certified Public Accountants. Our procedures will be substantially less in scope than an audit of financial statements performed in accordance with auditing standards generally accepted in the United States of America, and accordingly, we will not express an opinion on the Company's quarterly financial information.

Our reviews will consist primarily of inquiries of Company personnel and analytical procedures applied to financial data and we will require a representation letter from management. It should be understood that the management of the Company is responsible for the representations contained in the Company's quarterly financial information.

A review does not contemplate tests of internal controls or accounting records, tests of responses to inquiries by obtaining corroborating evidential matter, and certain other procedures ordinarily performed during an audit. Thus, a review does not provide assurance that we will become aware of all significant matters that would be disclosed in an audit.

Our review cannot be relied upon to disclose errors, fraud or illegal acts that may exist. However, to the extent that they come to our attention in completing our quarterly review procedures, we will inform management about any material errors and any instances of fraud or illegal acts. Further, to the extent that they come to our attention, we will inform the audit committee about fraud and illegal acts that involve senior management, fraud that in our judgment causes a material misstatement of the interim financial information, and illegal acts, unless clearly inconsequential, that have not otherwise been communicated to the committee.

Page 5

If we become aware of matters during our review that cause us to believe that interim financial information, filed or to be filed with the Securities and Exchange Commission is probably materially misstated as a result of a departure from accounting principles generally accepted in the United States of America, we will discuss the matter with management and, if appropriate, communicate such matters to the audit committee.

As agreed, we will not issue a written report upon completion of each review. However, we will inform you if we become aware of any material modifications that should be made to the quarterly financial information for it to be in conformity with accounting principles generally accepted in the United States of America. Should conditions preclude us from completing a review, we will advise you and the audit committee of the Company promptly.

**Registration Statements and Other Offering Documents**

We understand that the consolidated financial statements and schedules and our written report thereon, as described above, are to be included by the Company in its annual report (Form 10-K) and that in so doing, the Company will be incorporating by reference these consolidated financial statements and schedules and our reports thereon in previously filed and effective Form S-8. Prior to issuing our consent to the incorporation by reference in these registration statements of our report with respect to the consolidated financial statements and schedules described above, we will perform procedures as required by Statement on Auditing Standards No. 37, *Filings Under Federal Securities Statutes*, including, but not limited to, reading information incorporated by reference in these registration statements, and performing subsequent event procedures.

Should the Company wish to include or incorporate by reference these consolidated financial statements and our report thereon into a future filing under the Securities Act of 1933, or an exempt offering, prior to our consenting to include or incorporate by reference our report on such consolidated financial statements, we will be required to perform procedures as required by Statement on Auditing Standards No. 37, *Filings Under Federal Securities Statutes*, including, but not limited to, reading other information incorporated by reference in the registration statement or other offering document, and performing subsequent event procedures. Our reading of the other information included or incorporated by reference in the offering document will consider whether such information, or the manner of its presentation, is materially inconsistent with information, or the manner of its presentation, appearing in the consolidated financial statements. However, we will not perform procedures to corroborate such other information (including forward-looking statements). The specific terms of our future services with respect to future filings or other offering documents will be negotiated and agreed to at the time the services are to be performed.

Page 6

Should a comfort letter be requested in connection with a future filing under the Securities Act of 1933 or an exempt offering, the specific terms of our services will be negotiated and agreed to at that time. Prior to our issuance of a comfort letter, management of the Company agrees to supply us with a representation letter that will, among other things, confirm that no events have occurred that would require adjustments to (or additional disclosures in) the audited consolidated financial statements referred to above and confirm the Company's responses to certain inquiries made in connection with our issuance of the comfort letter.

\* \* \* \*

The work papers for this engagement are the property of KPMG LLP (KPMG). In the event KPMG is requested pursuant to subpoena or other legal process to produce its documents relating to this engagement for the Company in judicial or administrative proceedings to which KPMG is not a party, the Company shall reimburse KPMG at standard billing rates for its professional time and expenses, including reasonable attorney's fees, incurred in responding to such requests.

While the audit report may be sent to the Company electronically by the KPMG engagement partner for the Company's convenience, only the manually signed audit report constitute the Company's record copy.

Based upon our discussions with and representations of Company management, we estimate that our fees for these services will be $245,650, as indicated in the attachment to this letter. This estimate is based on the level of experience of the individuals who will perform the services. In addition, expenses are billed for reimbursement as incurred. Expenses for items such as travel, telephone, postage, and typing, printing, and reproduction of financial statements are estimated at $6,500. Circumstances encountered during the performance of these services that warrant additional time or expense could cause us to be unable to deliver them within the above estimates. We will endeavor to notify you of any such circumstances as they are assessed.

Our fees will be invoiced as follows:

| | |
|---|---|
| December 15, 2002 | $ 106,000 |
| January 20, 2003 | 72,000 |
| March 20, 2003 | 41,650 |
| June 20, 2003 | 13,000 |
| September 20, 2003 | <u>13,000</u> |
| Total | $ 245,650 |

Page 7

We shall be pleased to discuss this letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this letter. Please sign and return it to us.

Very truly yours,

KPMG LLP

*[signature: Carl]*

Carl E. Hertrich
*Partner*

**ACCEPTED:**

AstroPower, Inc.

_____*[signature]*_____
Authorized Signature
CHAIRMAN-AUDIT COMMITTEE
Title

_____6/10/03_____
Date

**CERTIFICATE OF SERVICE**

  I, Maribeth L. Minella, Esquire, hereby certify that on this 12th day of December 2006, I caused a true and correct copy of the Declaration of Carl E. Hertrich to be filed with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Daniel Bartley Rath (rath@lrclaw.com)
Maribeth Leslie Minella (bank@ycst.com)
Kerri King Mumford (mumford@lrclaw.com)
Ross H. Parker (rparker@munsch.com)
Phil C. Appenzeller, Jr (pappenzeller@munsch.com)

  I further certify that I have served the parties listed on the service list below in the manner indicated.

            /s/ Maribeth L. Minella
            Maribeth L. Minella

Jr. Phil C. Appenzeller, Esq
Ross H. Parker, Esq.
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard, Suite 3800
Dallas, TX 75201
(Astropower Liquidating Trust)
*First Class Mail*

Daniel B. Rath, Esq
Kerri K. Mumford, Esq.
James S. Green, Jr., Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19899
(Atropower Liquidating Trust)
*Hand Delivery*

Michael D. Warden, Esq
David S. Petron, Esq.
Sidley Austin LLP
1501 K. Street, N.W.
Washington, D.C. 20005
(KPMG, LLP)
*First Class Mail*

Joseph Warganz
Associate General Counsel
KPMG LLP
757 Third Avenue
New York, NY 10017
*First Class Mail*