## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTROPOWER LIQUIDATING TRUST, f/k/a ASTROPOWER, INC., | § § § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 06-469 (JJF) |
| KPMG LLP, | § § § | |
| Defendant. | § § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

LANDIS RATH & COBB LLP
Daniel B. Rath (No. 3022)
Kerri K. Mumford (No. 4186)
James S. Green, Jr. (No. 4406)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, Delaware 19899
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- AND -

MUNSCH HARDT KOPF & HARR, P.C.
Phil C. Appenzeller, Jr. (Tex. Bar. #24003710)
Ross H. Parker (Tex. Bar #24007804)
David Mizgala (Tex. Bar #24031594)
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

Dated: February 16, 2007

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................i

TABLE OF AUTHORITIES ..................................................................................iv

I. NATURE AND STATE OF PROCEEDINGS ........................................1

II. SUMMARY OF THE ARGUMENT ........................................................2

III. STATEMENT OF FACTS ......................................................................3

IV. ARGUMENT AND AUTHORITIES ......................................................7

    A.    **The Standard Applicable to 12(b)(6) Motions to Dismiss Prohibits KPMG from Recasting Plaintiff's Pleaded Facts to Favor KPMG and from Relying on "Evidence" not Attached to Plaintiff's Complaint.** ............................................................7

    B.    **Taking the Pleaded Facts as True and Drawing All Reasonable Inferences Therefrom, the Trust has Stated Viable Claims Against KPMG for Breach of Contract, Professional Negligence/Accounting Malpractice, and Negligent Misrepresentation.** ......................................................................8

        *1.*    *The Trust's Complaint Sets Forth Specific Factual Allegations to Support Its Claim that KPMG Breached Its Contractual Obligations to AstroPower.*............................9

            a.    **No construction of the Trust's Complaint—let alone a reasonable one—supports KPMG's absurd contention that the Trust's breach of contract claims based on the 2002 Audit are strictly limited to KPMG's failure to issue an "unqualified" audit opinion and its unexcused withdraw** ....................................................................9

            b.    **The Trust's Complaint plainly and unequivocally identifies conduct that supports its other breach of contract claims.** ...................................11

        *2.*    *The Trust's Complaint Sets Forth Specific Factual Allegations to Support Its Claim that KPMG Breached Its Professional Obligations to AstroPower.*.........................13

      a.    KPMG cannot meet its burden and obtain dismissal of the Trust's professional malpractice claims because, under Delaware law, determinations regarding the appropriate professional standard of care and any breach thereof are issues that can only be resolved by expert testimony...........................................................14

      b.    Even if the professional standard of care issues could be resolved in the context of a Rule 12(b)(6) motion to dismiss, the Trust's Complaint adequately alleges facts that support its professional malpractice and negligence claims. .........................................................................14

C.    Taking the Pleaded Facts as True and Drawing All Reasonable Inferences Therefrom, the Trust's Complaint Sufficiently Alleges that KPMG's Contractual Breaches, Professional Negligence/Accounting Malpractice, and Negligence Proximately Caused Plaintiff's Damages. .........................................16

    1.    *The Trust's Complaint Sufficiently Alleges Facts that, Taken as True, Make Plain that KPMG Played a Pivotal Role in, and Proximately Caused, AstroPower's Demise.*...................................................................17

      a.    The Trust's Complaint sets forth sufficient allegations to support its claim that KPMG's failure to comply with its contractual and professional obligations in connection with the 2002 Audit caused damage to AstroPower................................17

      b.    The Trust's Complaint sets forth sufficient allegations to support its claim that KPMG's failure to comply with its contractual and professional obligations under its pre-2002 contracts caused damage to AstroPower.....................................20

    2.    *KPMG's Imputation Argument Lacks any Factual or Legal Basis and, Therefore, Cannot Support Its Motion to Dismiss.*.............................................................22

      a.    KPMG cannot rely on agency imputation principles to avoid liability for its wrongful conduct because KPMG is not an innocent third party.............................................................23

b.    Even if the imputation doctrine were found to be applicable, Delaware's application of the adverse interest exception *a fortiori* precludes imputing knowledge of any financial accounting fraud to the Trust. ...................................................................24

c.    Moreover, even if the imputation doctrine were found to be applicable, the fact-intensive inquiry necessary to determine whether the adverse interest exception can be invoked precludes resolution of the issue by KPMG's Motion. ...............................26

D.    Properly Limited to the Trust's Complaint, KPMG Has Not—and Cannot—Establish Its *In Pari Delicto* Affirmative Defense. ...................26

E.    The Trust's Complaint Alleges Sufficient Facts to Support Its Gross Negligence and Exemplary Damages Claims. ........................................28

F.    The Trust has Pleaded A Viable Unjust Enrichment Claim that Is Not Subject to Dismissal. .................................................................................29

G.    The Trust has Pleaded A Viable Equitable Subordination Claim that Is Not Subject to Dismissal. ..............................................................30

V. CONCLUSION .............................................................................................................31

## TABLE OF AUTHORITIES

CASES

*Albert v. Alex. Brown Mgmt. Servs., Inc.,*
  2005 Del. Ch. LEXIS 133 (Del. Ch. Aug. 26, 2005) ............................................................29

*Bank v. Pitt,*
  928 F.2d 1108 (11th Cir. 1991) ..........................................................................................31

*Bily v. Arthur Young & Co.,*
  834 P.2d 745 (Cal. 1992)....................................................................................................19

*Breakaway Solutions, Inc. v. Morgan Stanley & Co. Inc.,*
  2004 Del. Ch. LEXIS 125 (Del. Ch. Aug. 27, 2004) ......................................................29-30

*Brown v. Interbay Funding, LLC,*
  417 F. Supp. 2d 573 (D. Del. 2006) ...................................................................................14

*Butler v. Snyder,*
  106 F. Supp. 2d 589 (D. Del. 2000) ......................................................................................7

*Conley v. Gibson,*
  355 U.S. 41 (1957) ................................................................................................................7

*Dura Pharms., Inc. v. Broudo,*
  544 U.S. 336 (2005) ............................................................................................................20

*Enzo Life Scis., Inc. v. Digene Corp.,*
  295 F. Supp. 2d 424 (D. Del. 2003) ....................................................................................18

*Hart v. Bayer Corp.,*
  199 F.3d 239 (5th Cir. 2000) ..............................................................................................31

*Hill v. Der,*
  521 F. Supp. 1370 (D. Del. 1981) .........................................................................................7

*In re HealthSouth Corp. Shareholders Lit.,*
  845 A.2d 1096 (Del. Ch. 2003) .......................................................................................25-26

*Jardel Co. v. Hughes,*
  523 A.2d 518 (Del. 1987)................................................................................................28-29

*Kost v. Kozakiewicz,*
  1 F.3d 176 (3d Cir. 1993) ...........................................................................................7, 9, 11

*Littleton v. Young,*
  1992 Del. LEXIS 15 (Del. Jan. 2, 1992) .............................................................................29

*McNamara v. PFS (In re Personal & Business Ins. Agency)*,
    334 F.3d 239 (3d Cir. 2003) .................................................................................26

*Menkowitz v. Pottstown Mem'l Med. Ctr.*,
    154 F.3d 113 (3d Cir. 1998) .................................................................................18

*Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.*,
    2005 Del. Super. LEXIS 57 (Del. Super. Ct. Feb. 23, 2005) .................................29

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997) .................................................................................18

*Mut. Life Ins. Co. v. Hilton-Green*,
    241 U.S. 613 (1916) .........................................................................................23

*NCP Lit. Trust v. KPMG LLP*,
    901 A.2d 871 (N.J. 2006) ...............................................................................22-24

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ......................................................................................7, 18

*Norfleet v. Mid-Atl. Realty Co.*,
    2001 Del. Super. LEXIS 357 (Del. Super. Ct. Apr. 20, 2001) .................................14

*Official Comm. of Unsecured Creditors v. Credit Suisse First Boston*
    *(In re Exide Techs., Inc.)*,
    299 B.R. 732 (Bankr. D. Del. 2003) .....................................................................21

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co (In re Walnut Equipment*
    *Leasing Co., Inc.)*,
    267 F.3d 340 (3d Cir. 2001) .................................................................................21

*OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*,
    340 B.R. 510 (Bankr. D. Del. 2006) ...................................................13, 19, 21-22

*O'Melveny & Myers v. Fed. Deposit Ins. Corp.*,
    512 U.S. 79 (1994) ...........................................................................................25

*Piecknick v. Pennsylvania*,
    36 F.3d 1250 (3d Cir. 1994) .............................................................................7, 18

*Pinter v. Dahl*,
    486 U.S. 622 (1988) .........................................................................................27

*Rafool v. The Goldfarb Corp. (In re Fleming Packaging Corp.)*,
    351 B.R. 626 (Bankr. C.D. Ill. 2006) ...................................................................20

*Semerenko v. Cendant Corp.*,
    223 F.3d 165 (3d Cir. 2000) .................................................................7, 18

*Spivey v. Robertson*,
    197 F.3d 772 (5th Cir. 1999) .......................................................................7

*Stanziale v. McGladrey & Pullen, LLP (In re Student Fin. Corp.)*,
    2006 U.S. Dist. LEXIS 56759 (D. Del. Aug. 10, 2006) .................................26, 28

*Stephens v. Kemp*,
    469 U.S. 1043 (1984) .................................................................................7

*Trenwick Am. Litig. Trust v. Ernst & Young*,
    906 A.2d 168 (Del. Ch. 2006) ................................................................20-21

*Young v. W. Coast Indus. Relations Assoc., Inc.*,
    763 F. Supp. 64 (D. Del. 1991) ....................................................................7

## OTHER AUTHORITIES

Delaware Superior Court Rule 9(b) .....................................................................29

FED. R. CIV. P. 8 ...............................................................................9, 13, 19

FED. R. CIV. P. 12 ........................................................................... *Passim*

FED. R. CIV. P. 56 ..............................................................................1, 18

RESTATEMENT (SECOND) OF AGENCY § 272 (1958) ......................................................23

RESTATEMENT (SECOND) OF AGENCY § 280 (1958) ......................................................23

RESTATEMENT (SECOND) OF AGENCY § 282 (1958) ......................................................26

RESTATEMENT (THIRD) OF AGENCY § 5.03 (2006) ......................................................23

RESTATEMENT (THIRD) OF AGENCY § 5.04 (2006) ......................................................26

RESTATEMENT (THIRD) OF AGENCY § 5.05 (2006)......................................................24

Plaintiff AstroPower Liquidating Trust (the "Trust" or "Plaintiff") files its Response in Opposition to Defendant KPMG LLP's Motion to Dismiss and, in support, shows:

## I.
### NATURE AND STATE OF PROCEEDINGS

The Trust filed this lawsuit seeking to recover damages resulting from Defendant KPMG LLP's ("KPMG") breach of its contractual duties, professional malpractice, and negligence. [D.I. Nos. 1, 6]. Under the guise of a motion to dismiss for failure to state a claim upon which relief can be granted (KPMG's "Motion"), KPMG now attempts to absolve itself from all liability for its own wrongful conduct and substantial role in AstroPower's ultimate demise. [D.I. No. 11]. In its brief in support of its Motion (KPMG's "Brief" [D.I. NO. 13]) (hereafter cited as "KPMG Br. at __"), however, KPMG mistakenly substitutes and applies the standards applicable for summary judgment motions under Rule 56 in place of the standards applicable to motions to dismiss under Rule 12(b)(6). Therefore, in an attempt to support its Motion, KPMG, among other things: (i) improperly construes the Trust's pleaded facts <u>against</u> the Trust and constructs unreasonable inferences in <u>KPMG's</u> favor rather than the Trust's, and (ii) impermissibly attempts to controvert the Trust's pleaded facts with evidence outside of the Trust's Complaint. KPMG's Brief is defective for the further reason that KPMG completely ignores and/or improperly applies controlling legal authority. Stripping away these readily apparent errors and applying the correct legal standard, KPMG did not—and cannot—meet its burden of demonstrating that the Trust can prove no set of facts in support of its claims which would entitle it to relief. Accordingly, KPMG's Motion should be denied.

1

## II.
### SUMMARY OF THE ARGUMENT

1.     The Trust's Complaint plainly and unequivocally sets forth facts which—when taken as true and construed in the Trust's favor—establish that, among other things, KPMG: (i) breached its contracts with AstroPower, (ii) committed professional negligence/accounting malpractice, and (iii) made numerous negligent misrepresentations.  KPMG's contrary assertion that it "did not breach its contracts, violate its professional obligations or make negligent misrepresentations," KPMG's Br. at 1, cannot support KPMG's Motion because, at most, such an assertion creates a factual dispute that cannot be resolved in the context of a motion to dismiss under Rule 12(b)(6).

2.     The Trust's Complaint plainly and unequivocally sets forth facts which—when taken as true and construed in the Trust's favor—establish that KPMG's breach of its contractual duties, professional obligations, and its negligence resulted in damage to AstroPower.  And, to the extent such causation is not readily apparent from the Complaint, the Trust is entitled to conduct discovery before its claims are dismissed.

3.     KPMG's assertion that any fraud committed by AstroPower's directors and officers "is imputed to [P]laintiff and thereby defeats its claims," KPMG's Br. at 1, cannot support its Motion.  Under controlling law, determining whether a fraud allegedly committed by AstroPower's directors and officers can be imputed to AstroPower requires a fact-intensive analysis that cannot appropriately be resolved in the context of a Rule 12(b)(6) motion to dismiss.

4.     KPMG asserts that "the *in pari delicto* doctrine bars [the Trust's] claims against KPMG."  KPMG's Br. at 2.   Under controlling law, KPMG bears the burden to establish the *in pari delicto* affirmative defense from the face of the Trust's Complaint alone.  KPMG is unable

2

to do so in the context of a motion to dismiss because determining the defense's applicability requires a fact-intensive analysis that cannot be resolved in the context of a Rule 12(b)(6) motion to dismiss.

5.      Despite KPMG's unsupported assertion to the contrary, the existence of an express contract does not bar the Trust's alternative unjust enrichment claim.

6.      The Trust's Complaint plainly and unequivocally sets forth facts which—when taken as true and construed in the Trust's favor, as required at this stage of the litigation—provide KPMG with fair notice of the Trust's claims, sufficient facts to justify an award of punitive damages, and support the Trust's claim for equitable subordination.

7.      Under the liberal pleading standards applicable to federal complaints, the Trust's factual allegations are more than sufficient to not only provide notice of, but also to support each of the Trust's claims against KPMG.  The Trust's Complaint, therefore, is more than sufficient to withstand KPMG's dismissal motion under Rule 12(b)(6).  Accordingly, lacking merit, KPMG's Motion should be denied.

## III.
### STATEMENT OF FACTS

The Trust's claims against KPMG all arise out of KPMG's performance of—or its failure to perform—its contractual obligations and professional duties over the course of its decade-long relationship with AstroPower, Inc. ("AstroPower").[1] *See generally* Amended Complaint and Jury Demand (the "Complaint") (cited hereafter as "Compl. ¶ __").  [D.I. No. 6].  In 1992, AstroPower and KPMG entered into a contract whereby KPMG agreed to be AstroPower's auditor and outside accounting firm. *Id.* ¶ 10.  Under its successive contracts, KPMG agreed to

---

[1]  The facts necessary to support the Trust's claims and defeat KPMG's Motion are set forth fully, and incorporated herein by reference, in the Trust's Complaint.  For brevity's sake, only those facts that are most salient to KPMG's Motion are recited below.

issue yearly opinions regarding AstroPower's financial reporting under Generally Accepted Accounting Principles (GAAP) and under Generally Accepted Accounting Standards (GAAS). *Id.* ¶ 27. To comply with this obligation, KPMG was required to, at a minimum, review and analyze AstroPower's consolidated balance sheets and related income statements, as well as its stockholder equity and cash flows for each year. *Id.* ¶ 27. In 1998, after AstroPower went public, KPMG's role expanded to include all tasks necessary for AstroPower to prepare and submit its quarterly and year-end SEC filings. *Id.* ¶ 29.

During the course of KPMG's relationship with AstroPower, KPMG agreed to, among other things: (i) audit AstroPower's financial statements and prepare written and audited reports in accordance with GAAS; (ii) express an opinion as to whether the presentation of the consolidated financial statements, taken as a whole, conformed with GAAP; (iii) advise AstroPower's Board of Directors, management, and shareholders about the lack of internal controls, errors, ongoing illegal or fraudulent activities, irregularities, and materially false statements about which KPMG knew or should have known; and (iv) exercise due care in timely rendering audits and providing guidance to AstroPower on matters for which it retained KPMG. *Id.* ¶ 28.

KPMG not only recommended, but in some instances required, the implementation of numerous policies and procedures related to AstroPower's revenue recognition, inventory valuation, and equipment under construction practices, the proprietary of which it later called into question. *Id.* ¶¶ 45-57. Although KPMG's policies and procedures at AstroPower were in place for a number of years, it was not until late in 2002—not coincidentally just after the Sarbanes-Oxley Act's enactment—that KPMG became concerned about the effects its recommended accounting practices had on AstroPower's financials. *Id.* ¶ 58. Undoubtedly

aware of the seriousness of its prior failings and driven by the instinct of self-preservation, in April 2003, and in connection with its work on the 2002 year-end audit (the "2002 Audit"), KPMG notified AstroPower (for the first time) that there were problems with AstroPower's revenue recognition practices and its internal controls—the same practices and controls that were previously known and/or recommended by KPMG—that undermined the accuracy of AstroPower's financials. *Id.* ¶ 62.

By that time, it was too late for AstroPower to correct KPMG's prior mistakes. KPMG notified AstroPower that, without further investigation, it could not certify AstroPower's 2002 financials. *Id.* ¶ 16. As a result, AstroPower was unable to file its Form 10-K and Form 10-Q with the SEC, which ultimately resulted in AstroPower being delisted from NASDAQ. Compl. ¶¶ 16-22. Unsurprisingly, the market reacted negatively to AstroPower's KPMG-created problems, and AstroPower's business suffered greatly as vendors refused to extend credit services of financing and capital development, and AstroPower became increasingly unable to meet its financial obligations. *Id.* ¶¶ 17-23.

As the 2002 Audit progressed, KPMG became increasingly adversarial with AstroPower, and threatened not to complete the audit unless AstroPower removed its then-current CEO and CFO and demanded that AstroPower undertake additional (but undefined) forensic procedures.[2] *Id.* ¶ 65. Though AstroPower repeatedly advised KPMG that it (AstroPower) was willing to do whatever was necessary to complete the 2002 Audit, KPMG provided AstroPower with inadequate guidance as to the scope, cost, and timing of the procedures allegedly necessary to

---

[2] In an attempt to shift the blame from itself—a common tactic employed throughout its Brief—KPMG asserts that the Complaint's allegation that KPMG forced the CEO's and CFO's ouster is somehow inconsistent with its Revised Disclosure Statement filed with the Bankruptcy Court, wherein AstroPower stated that these officers resigned "subsequent to [its independent investigator's] preliminary report on the Debtor's internal controls[.]" KPMG Br. at 2 n.1. Of course, as with KPMG's other arguments, there is no merit to this assertion. Indeed, far from being inconsistent, the statement in the Complaint is a more specific factual recitation than that contained in the Revised Disclosure Statement.

complete the audit. *Id.* ¶ 66-67. Instead, KPMG provided AstroPower with a moving target, stating that it (KPMG) would be able to complete the 2002 Audit if only AstroPower would provide certain information. *Id.* ¶ 68. As soon as AstroPower provided that information, however, KPMG would build another road block, stating that it now needed additional and different information to complete the 2002 Audit. *Id.* ¶ 68.

Throughout KPMG's claimed attempts to complete the 2002 Audit, AstroPower was actively soliciting—and ultimately was not able to secure—equity and/or debt infusion. Each of the potential cash sources stated they would contribute to AstroPower, but only upon the provision of audited financials. *Id.* ¶ 69. In late December 2003, however, after stringing AstroPower along for nearly a year, KPMG wrote AstroPower a letter stating that "the client-auditor relationship between AstroPower, Inc. and KPMG has ceased." *Id.* ¶ 71. KPMG never completed the 2002 Audit and AstroPower never secured the additional funding that was available to it upon the provision of audited financials. *Id.* ¶ 71. Shortly after KPMG's withdrawal, AstroPower was forced into bankruptcy as a cumulative result of KPMG's: (i) ill-conceived and implemented accounting policies and procedures, (ii) willful blindness to the lack of internal controls, and (iii) failure to adhere to its contractual and professional obligations to timely and competently conduct and complete its audits. *Id.* ¶ 73. Thereafter, pursuant to various Bankruptcy Court Orders, AstroPower's claims against KPMG were transferred to the Trust, which now brings this suit to recover from KPMG the damages it caused AstroPower to suffer.

# IV.

## ARGUMENT AND AUTHORITIES

### A. The Standard Applicable to 12(b)(6) Motions to Dismiss Prohibits KPMG from Recasting Plaintiff's Pleaded Facts to Favor KPMG and from Relying on "Evidence" not Attached to Plaintiff's Complaint.

"[M]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are granted only in the rarest of circumstances." *Hill v. Der*, 521 F. Supp. 1370, 1390 (D. Del. 1981). This is because a motion to dismiss is not intended to resolve factual disputes or the merits of a case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Instead, a motion to dismiss is merely a procedural device to test a complaint's sufficiency. *Id.* Thus, in the context of KPMG's Motion, "[t]he issue is not whether [the Trust] will ultimately prevail but whether [it] is entitled to offer evidence to support [its] claims." *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). Therefore, in considering KPMG's Motion, the Court "must accept as true all allegations in [the Trust's Complaint] and must draw all reasonable factual inferences in the light most favorable to [the Trust]." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir. 1994).

Dismissal is appropriate only "when it appears beyond doubt that [the Trust] can prove no set of facts in support of [its] claims which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45 (1957). As the movant, it is KPMG's burden to demonstrate that the Trust has failed to state a claim upon which relief can be granted. *Young v. W. Coast Indus. Relations Assoc., Inc.*, 763 F. Supp. 64, 67 (D. Del. 1991). Importantly, in determining whether KPMG has met its burden, "the [C]ourt cannot look beyond the face of the pleadings."[3] *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Stephens v. Kemp*, 469 U.S. 1043, 1057 (1984) ("[I]f a

---

[3] This standard makes KPMG's self-serving factual recitation completely irrelevant to its Motion. *See Butler v. Snyder*, 106 F. Supp. 2d 589, 591 n.2 (D. Del. 2000) ("[T]he court will disregard the defendants' factual averments and supporting affidavits, and decide their motion on a Rule 12(b)(6) standard.").

court considers matters outside the pleadings in determining whether to enter judgment, the motion shall be considered as one for summary judgment 'and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion.'") (quoting FED. R. CIV. P. 12(c)).  In other words, KPMG cannot rely on evidence outside the Complaint to support its Motion.[4]

**B.    Taking the Pleaded Facts as True and Drawing All Reasonable Inferences Therefrom, the Trust has Stated Viable Claims Against KPMG for Breach of Contract, Professional Negligence/Accounting Malpractice, and Negligent Misrepresentation.**

KPMG's inaccurate and self-serving factual interpretations, coupled with its misstated and misapplied standards, do not and cannot sully the Trust's legally sound and factually supported breach of contract, professional negligence/accounting malpractice, and negligent misrepresentation claims.  To the contrary, despite KPMG's skewed view of the facts and overly narrow construction of the Trust's Complaint, the fact remains that, accepting all pleaded allegations as true, and drawing all reasonable factual inferences in the light most favorable to the Trust, there can be no question that the Trust has alleged facts sufficient to support the necessary aspects of its breach of contract, professional malpractice, and negligence claims.[5]

---

[4] If the Court treats KPMG's Motion as a summary judgment motion, the Trust respectfully requests the opportunity to conduct discovery and respond appropriately before the Court rules on KPMG's Motion.

[5] KPMG concedes that the Trust's ability to show that a breach of KPMG's contractual and/or professional obligations that caused damage to AstroPower would also support the Trust's negligent misrepresentation claims. *See* KPMG Br. at 15 ("Although styled differently, all three claims require AstroPower to establish that KPMG somehow breached its professional obligations and thereby caused damage to AstroPower.").  Therefore, and because KPMG does not specifically address the Trust's negligence claim, the Trust confines its Response to KPMG's arguments concerning the Trust's breach of contract and professional malpractice claims—presuming, as KPMG does, that a showing that such claims are sufficiently pleaded and would also satisfy the pleading requirement pertinent to the Trust's negligence claim.

1.    **The Trust's Complaint Sets Forth Specific Factual Allegations to Support Its Claim that KPMG Breached Its Contractual Obligations to AstroPower.**

a.    **No construction of the Trust's Complaint—let alone a reasonable one—supports KPMG's absurd contention that the Trust's breach of contract claims based on the 2002 Audit are strictly limited to KPMG's failure to issue an "unqualified" audit opinion and its unexcused withdraw.**

KPMG asserts that "AstroPower's Complaint fails because KPMG did not breach its contract[s]" with AstroPower. KPMG Br. at 16. Besides being improper under Rule 12(b)(6), KPMG's attempt to prove the merits of its defense cannot support its Motion for the fundamental reason that it is based on an unsupportable construction of the Trust's Complaint.[6]  According to KPMG, in relation to the 2002 Audit, the Trust's breach of contract claim is premised on nothing more than: (1) "KPMG's refusal to issue an <u>unqualified</u> audit opinion,"[7] and (2) KPMG's allegedly unrestrained right to withdraw from the audit. KPMG Br. at 16-17. Because, KPMG claims, the 2002 Engagement Letter expressly contemplated both actions, the Trust cannot, under any set of facts, state a breach of contract claim against KPMG based on the 2002 Audit. *Id.* This disingenuous and inaccurate construction of the Complaint is, in KPMG's own words, complete and utter "nonsense." KPMG Br. at 16.

---

[6]  It is axiomatic that KPMG's mere *ipse dixit* that it "did not breach its contract or violate its professional obligations" is wholly insufficient to support its Motion. This is so because, even assuming KPMG had actual evidence to support its contention—which it does not—such evidence could not be considered in support of its Motion; rather, to rely on such evidence, KPMG would have to file a <u>summary judgment</u> motion. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (noting that a motion to dismiss is not intended to resolve factual disputes or the merits of a case).

[7]  Under Rule 8(c)'s very low pleading threshold, KPMG's only hope of winning dismissal of the Trust's contract claims is to narrowly construe such claims as being limited only to KPMG's act of withdraw and its failure to issue and "<u>unqualified</u> audit opinion." So singular is KPMG's focus on trying to give this argument credence, in discussing the 2002 Audit, KPMG repeats the phrase "unqualified audit opinion" or "unqualified opinion" no less than five times in the opening paragraph of its Argument section alone, and an additional seven times in just a three page section later in the Brief. KPMG Brief at 12, 16-18. Of course, to the extent the Trust's breach of contract claims are based on KPMG's failure to issue an audit opinion, it is not KPMG's failure to issue an "unqualified" audit opinion that constitutes a contractual breach, but its failure to issue **any** opinion, despite receiving hundreds of thousands of dollars in fees, and wasting untold hours of AstroPower's officers' and employees' time—time that would have been better spent attending to AstroPower business endeavors. *See, e.g.,* Compl. ¶¶ 70, 78-80.

No reasonable reading of the Trust's Complaint—much less one that <u>favors</u> the Trust— could be interpreted as basing its breach of contract claim on the simple fact that KPMG did not issue an unqualified audit opinion or that it merely withdrew from the audit. Indeed, such facts—by themselves—may not support a breach of contract claim against KPMG. But those facts do not exist in isolation. Rather, as is apparent from even a cursory review of the Trust's <u>entire</u> Complaint, those facts are the stated end result of KPMG's numerous failings during the nearly <u>twelve months</u> and hundreds-of-thousands of dollars—not to mention countless man hours diverted from AstroPower's actual business endeavors—that it took to conduct the 2002 Audit. *See* Compl. ¶¶ 59 (noting 2002 Engagement Letter signed January 30, 2003), 71 (noting AstroPower received KPMG's termination letter on or about December 29, 2003).

Indeed, though nothing in the 2002 Engagement Letter required KPMG to issue an "unqualified" audit opinion, the agreement certainly contemplated that, in return for the amounts it received, KPMG would issue an opinion of some kind—be it qualified or unqualified. *See* Compl. ¶¶ 60-61. Moreover, nothing in the Complaint suggests that AstroPower's ability to obtain additional financing was dependent upon an unqualified opinion. *See* Compl. ¶ 69 ("Debt and equity would have been available to AstroPower; but only if the Company could provide audited financials."). And, given AstroPower's public disclosure of its KPMG-created accounting problems, it is reasonable to infer that such financing was not dependent upon an unqualified opinion. *See* Compl. 16. The fact remains, however, that KPMG assured AstroPower that it could—and would—complete the audit and issue an opinion after AstroPower jumped through additional hoops. *See* Compl. ¶ 65. Of course, as it turned out, even after AstroPower completed KPMG's requested procedures, KPMG still refused to complete the 2002 Audit and issue an opinion of any kind. *See* Compl. ¶ 66-69. Instead, without any justification

10

and without having completed its contractual obligations, KPMG "fired" AstroPower. *See* Compl. ¶ 71.

In an attempt to justify these failings, KPMG now asserts that the 2002 Engagement Letter "specifically contemplated that KPMG might not be able to provide AstroPower an unqualified audit opinion and might be required to withdraw from the audit prior to its completion." KPMG Br. at 17. Thus, KPMG contends, "there can be no liability for doing what [the 2002 Engagement Letter] permits." *Id.* What KPMG fails to recognize is that whether the 2002 Engagement Letter permitted KPMG to act as it did is the very issue raised by the Trust's breach of contract claims. Certainly, even KPMG would not contend that it had an unfettered right to withdraw, but instead, that KPMG had to have an adequate basis to withdraw. Considering the Trust's allegations that AstroPower did everything requested by KPMG necessary to complete the audit, the inference favorable to the Trust is that KPMG's failure to complete the audit and its decision to withdraw were both unjustified. At any rate, such a fact-intensive inquiry is not appropriately resolved by a motion to dismiss under Rule 12(b)(6). *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (noting that a motion to dismiss is not intended to resolve factual disputes or the merits of a case).

**b.    The Trust's Complaint plainly and unequivocally identifies conduct that supports its other breach of contract claims.**

As to its other contractual breaches, KPMG asserts that "[t]he *only* alleged facts relate to the December 31, 2002 audit." KPMG Brief at 19. Thus, KPMG argues, "the Complaint does not provide any notice of any alleged breach of a duty or causal theory upon which AstroPower's accounting malpractice and other claims are based." *Id.* This argument is as unavailing—and as wrong—as KPMG's first argument.

The Trust's Complaint plainly asserts that "KPMG breached its contracts with AstroPower by failing to provide the bargained-for services and conduct its audits in accordance with GAAP and GAAS." Compl. ¶ 80. The Trust specifically identifies the following as examples of the "bargained-for services" that KPMG contracted but failed to provide: (i) auditing AstroPower's financial statements and preparing written and audited reports in accordance with GAAS; (ii) expressing an opinion as to whether AstroPower's consolidated financial statements—taken as a whole—conformed with GAAP; (iii) advising the Board of Directors, management, and shareholders about the lack of any internal controls, errors, ongoing illegal and fraudulent activities, irregularities, and materially false statements that KPMG knew about or should have known about; and (iv) exercising due care in timely rendering audits and providing guidance to AstroPower. Compl. ¶ 28.

Had KPMG endeavored to construe the Trust's Complaint fairly, it would surely have understood that items (i) – (iii) above all relate to KPMG's failings that led up the 2002 Audit fiasco. To be sure, the Trust's contentions about KPMG's ill-conceived and implemented accounting policies and procedures, as well as its blindness to the lack of internal controls can only relate to KPMG's pre-2002 Audit conduct. *See generally* Compl. ¶¶ 32-57. Accordingly, to the extent KPMG failed to discern any factual allegations concerning its pre-2002 contractual breaches, such failing is the direct result of its own overly narrow construction of the Trust's Complaint.

KPMG's final argument concerning the Trust's contract claims is that, to provide KPMG "fair notice" of the Trust's claims, the Complaint should have identified: "(1) what financial statements are at issue, (2) whether and by how much those financial statements might be misstated, (3) in what way the financial statements were not fairly presented in accordance with

GAAP, and (4) what provisions of GAAS KPMG allegedly violated." KPMG Br. at 19. Like its other arguments, this one does not withstand scrutiny.

Nothing in the federal rules of civil procedure requires the Trust to plead its claims with the specificity KPMG demands. *See OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510, 527 (Bankr. D. Del. 2006) ("The liberal standards of notice pleading do not require a plaintiff to identify the specific contract provision at issue."). To the contrary, all that is required is "a short and plain statement of the claim." FED. R. CIV. P. 8(a). As demonstrated above, and as is evidenced from its more than 128 paragraph Complaint, the Trust has more than satisfied that requirement.

### 2. The Trust's Complaint Sets Forth Specific Factual Allegations to Support Its Claim that KPMG Breached Its Professional Obligations to AstroPower.

Having misconstrued, and then given short shrift to, the Trust's breach of contract claims, KPMG asserts that "[g]iven that KPMG complied with its contractual obligations, AstroPower must then show that KPMG's conduct breached professional standards."[8]  KPMG Br. at 17. Setting aside the fact that this argument impermissibly imposes upon the Trust the burden of proving its claims in response to KPMG's Motion, KPMG's argument fails for the additional reasons that: (i) under Delaware law, determinations regarding the appropriate professional standard of care and any breach thereof are issues that can only be resolved by expert testimony, and (ii) even if they could be made without resort to experts, in this case, such determinations cannot be made from the face of the Trust's Complaint.

---

[8]  For the reasons stated above, engaging in the fiction that KPMG complied with all of its contractual obligations would require the assumption that KPMG's various contracts permitted it to, among other things: (i) string AstroPower along for twelve months before refusing to issue an audit opinion, (ii) fabricate reasons for its unexcused withdraw from the audit, (iii) implement accounting policies and procedures that did not comply with GAAP and GAAS, and (iv) certify financials that did not conform to GAAP and GAAS. *See* discussion *supra* Part IV.B.1.

13

a.   **KPMG cannot meet its burden and obtain dismissal of the Trust's professional malpractice claims because, under Delaware law, determinations regarding the appropriate professional standard of care and any breach thereof are issues that can only be resolved by expert testimony.**

KPMG's self-serving assertions that it did not "violate its professional obligations, or make negligent misrepresentations" provide no basis for dismissing the Trust's claims. KPMG Br. at 1. Under Delaware law, the applicable professional standard of care is determined by the local community where the conduct occurred. *See Norfleet v. Mid-Atl. Realty Co.*, 2001 Del. Super. LEXIS 357, at *15 (Del. Super. Ct. Apr. 20, 2001) ("The use of a local standard when considering professional negligence is [] consistent with the Restatement (Second) Torts § 299A and Delaware Pattern Jury Instruction Civil § 8.1."). Moreover, whether KPMG complied with the applicable standard of care is an issue that can only be properly resolved by expert testimony. *Brown v. Interbay Funding, LLC*, 417 F. Supp. 2d 573, 579 (D. Del. 2006). Accordingly, the determination of what standard of care applies to KPMG, as well as whether KPMG breached that standard—neither of which can be determined from the face of the Trust's Complaint—are issues that cannot be resolved in the context of KPMG's Motion.[9]

b.   **Even if the professional standard of care issues could be resolved in the context of a Rule 12(b)(6) motion to dismiss, the Trust's Complaint adequately alleges facts that support its professional malpractice and negligence claims.**

The issue presented by KPMG's Motion is not whether KPMG <u>actually</u> breached its professional obligations, but whether the Trust's Complaint sufficiently <u>alleges</u> such breaches. *See generally* discussion *supra* Part IV.A. (standard of review). Undeniably, the answer to this latter question is, "Yes." Specifically, the allegations in the Trust's Complaint unequivocally aver that AstroPower and KPMG had a professional relationship for over a decade (beginning in

---

[9]   It goes without saying, therefore, that KPMG's repeated reliance on the AICPA Codification of Statements on Auditing Standards is not only improper, but unavailing.

1992 and continuing through 2003).  Compl. ¶¶ 10, 25.  During these years, KPMG was obligated to audit AstroPower's financials and charged with other auditing functions.  Compl. ¶ 10.  In performing these functions, KPMG exercised its (presumably) professional judgment and specifically condoned and/or recommended:  (i) revenue recognition practices that were not in compliance with GAAP and GAAS; (ii) inventory valuation that were incorrect; and (iii) an improper accounting treatment for equipment under construction.  Compl. ¶¶ 45-57.

Additionally, under what turned out to be its final contract with AstroPower (*i.e.*, the 2002 Audit), KPMG refused to define the scope of additional audit procedures that AstroPower needed to undertake to complete the 2002 audit process.  Compl. ¶¶ 65-67.  Not only did KPMG refuse to provide AstroPower with any guidance on these issues, KPMG created a moving target for AstroPower by stating that it (KPMG) would complete the audit if AstroPower would provide certain information, but as soon as AstroPower provided such information, KPMG would request new and additional information.  Compl. ¶ 68.

Based on these facts, and others alleged in the Complaint, the Trust specifically identified ten separate actions taken by KPMG that would violate its professional obligations to AstroPower.[10]  Compl. ¶ 84.  Pretending that the Trust never asserted these claims, KPMG fails

_____

[10]  Specifically, the Complaint identifies the following breaches of KPMG's professional obligations:  (1) Failing to audit AstroPower's financial statements and prepare reports with appropriate skill and diligence; (2) Failing to advise adequately, inquire into, and to investigate independently accounting and financial information; (3) Failing to properly and fully advise AstroPower's management, Board of Directors, Audit Committee, and shareholders of the lack of internal controls, ongoing accounting irregularities, and incorrect financial statements of which KPMG was or should have been aware through reasonable diligence and skill; (4) Failing to inquire into suspect transactions and/or records in order to undertake appropriate steps to account for and/or inform management about those suspect transactions and/or records; (5) Certifying AstroPower's financial statements to the Company's management, Board, Audit Committee, and shareholders as true, accurate, and correct when KPMG knew or should have known of their inaccuracy and/or falsity; (6) Failing to investigate the proper accounting treatment for (i) AstroPower's revenue recognition practices; (ii) inventory valuation practices; and, (iii) EUC capitalization practices; (7) Failing to advise AstroPower on its (i) revenue recognition practices; (ii) inventory valuation practices; and, (iii) EUC capitalization practices; (8) Failing to complete AstroPower's 2002 year-end financial audit, and in fact, being more concerned about its own liability exposure than the effect of its failure to complete these financials; (9) Failing to timely notify AstroPower that its financials from 2002 and prior were not performed in accordance

to address even one of them. Instead, in a labored attempt to win dismissal, KPMG recycles the argument it made in relation to the Trust's contract claims, claiming unabashedly that "[t]he only possible accounting malpractice that could have resulted [from its decade-long representation of AstroPower] would have been if KPMG had done what AstroPower [] alleges KPMG should have done: buckle under to AstroPower's pressure and issue an <u>unqualified</u> audit opinion[.]"[11] *Id.* at 18 (emphasis added). KPMG further asserts that, because of the Trust's unwillingness to take remedial measures after KPMG discovered fraud, "KPMG had no option but to withdraw from the AstroPower engagement." *Id.* at 18-19. For the same reasons that KPMG's identical argument fails in the breach of contract context, it cannot succeed here—*i.e.*, not only is the argument an overly narrow construction of the Trust's Complaint, it is contrary to the Trust's pleaded facts and involves an analysis of fact-intensive issues that cannot properly be resolved by a Rule 12(b)(6) motion to dismiss. *See generally* discussion *supra* Part IV.B.1.

**C.    Taking the Pleaded Facts as True and Drawing All Reasonable Inferences Therefrom, the Trust's Complaint Sufficiently Alleges that KPMG's Contractual Breaches, Professional Negligence/Accounting Malpractice, and Negligence Proximately Caused Plaintiff's Damages.**

Having demonstrated above that the Trust's Complaint sufficiently alleges facts to supports its claims based on KPMG's contractual breaches, professional malpractice and negligence, the success of KPMG's Motion depends on its other contention that the Trust can prove no set of facts that would establish that KPMG's wrongful conduct resulted in damage to AstroPower. *See* KPMG Br. at 13. In an attempt to break the causal chain between its

---

with GAAP and GAAS; and (10) Failing to staff the 2002 audit and prior AstroPower auditing, accounting, and consulting engagements with personnel of sufficient knowledge, training, and expertise. Compl. ¶ 84.

[11] Given its bent on construing the Complaint as narrowly as possible, it is not surprising that KPMG failed to consider that, under the Trust's malpractice theory, KPMG could be liable for, among other things: (i) failing to detect and report problems that would have been discovered by a reasonably competent auditor (*e.g.*, a lack of internal controls), and (ii) recommending the very accounting practices and procedures that KPMG called into question during the 2002 Audit.

contractual breach, professional malpractice and negligence, KPMG pins its hope on two conclusory and unsupported arguments: (1) KPMG's "role in the causal chain leading to AstroPower's demise is too speculative and remote to hold KPMG liable" and (2) any accounting fraud "is imputed to the Trust and defeats [its] claims against KPMG." KPMG Brief at 21, 26. On their face these arguments fail because each one requires an intensive factual inquiry and analysis that cannot be resolved in the context of a Rule 12(b)(6) motion to dismiss. Moreover, on the merits, both arguments are legally unsupportable.

> **1.    *The Trust's Complaint Sufficiently Alleges Facts that, Taken as True, Make Plain that KPMG Played a Pivotal Role in, and Proximately Caused, AstroPower's Demise.***

KPMG provides no support for its contention that its role in AstroPower's demise was "too speculative and remote to hold KPMG liable." KPMG Br. at 21. Instead, KPMG attempts to create a conflict between the Trust's damage theories. *See id.* ("AstroPower's Complaint pursues a series of different causal theories that are at war with each other."). To do this, though, KPMG creates a tautology that not only ignores the Trust's actual pleaded facts, but, ironically, is premised on KPMG's own rampant speculation as to what the facts do not—but what KPMG hopes discovery might possibly—reveal. *See id.* at 22-25.

> **a.    The Trust's Complaint sets forth sufficient allegations to support its claim that KPMG's failure to comply with its contractual and professional obligations in connection with the 2002 Audit caused damage to AstroPower.**

According to KPMG, the Trust cannot establish causation unless it can prove "first, [that] debt and equity would have been available to AstroPower, and second, AstroPower would have been able to receive an unqualified audit opinion on its financial statements." KPMG Br. at 22. The first problem with KPMG's theory is that it cannot get around the fact that the Trust's Complaint unequivocally states—as a positive assertion of fact—that "Debt and equity would

17

have been available to AstroPower; but only if the Company could provide audited financials."

Compl. ¶ 69. Rather than accepting this statement as true (as is required under the applicable

standard), KPMG impermissibly attempts to contradict this statement, stating:

> AstroPower has not identified a single prospective investor or lender who might
> have been willing to provide it with additional funding, let alone the terms of any
> such offering or borrowing, or the security it could post. AstroPower has not
> explained whether any existing covenants prohibited or permitted such action,
> whether an underwriter would have been willing to assist AstroPower to raise
> capital through additional stock offerings, or how it could pay the professional
> and other fees to raise that money[.]

KPMG Brief at 22. According to KPMG, "[t]hese omissions are fatal." Such a contention,

however, only serves to highlight KPMG's failure to apply the standard applicable to motions to

dismiss under Rule 12(b)(6) rather than summary judgment under Rule 56.

Because "[t]he issue is not whether [the Trust] will ultimately prevail but whether [it] is

entitled to offer evidence to support [its] claims," *Semerenko v. Cendant Corp.*, 223 F.3d 165,

173 (3d Cir. 2000), for purposes of its Motion, KPMG "must accept as true all allegations in [the

Trust's Complaint] and must draw all reasonable factual inferences in the light most favorable to

[the Trust]," *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Piecknick v. Pennsylvania*, 36 F.3d

1250, 1255 (3d Cir. 1994). Importantly, the Trust "need not allege the existence of every

element of [every] claim as long as the allegations plead facts sufficient to provide [KPMG] with

'fair notice of the transaction' and to 'set[ ] forth the material points necessary to sustain

recovery.'" *Enzo Life Scis., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 427 (D. Del. 2003)

(quoting *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir. 1998)). KPMG

tries to circumvent the federal rule's liberal pleading standard by characterizing the Trust's

statement concerning its ability to procure additional financing as merely a "bald assertion" that

the Court need not accept. KPMG Brief at 23 (citing *Morse v. Lower Merion Sch. Dist.*, 132

F.3d 902, 906 (3d Cir. 1997)). Discovery will reveal, however, the Trust's assertion is a

factually based statement, not a mere "bald assertion." *See OHC Liquidation Trust*, 340 B.R. at 523 (noting that "significant detail" is not required at pleading state and that moving party can pursue such details in discovery). In all events, the Trust's factual statement is sufficient to satisfy Rule 8's pleading requirement. *See* FED. R. CIV. P. 8(a) (requiring only a "short and plain statement").

For the same reasons, KPMG cannot prevail on its second argument—that, to obtain additional debt or equity, "AstroPower would have undoubtedly needed an <u>unqualified</u> audit opinion[.]" KPMG Br. at 23 (emphasis added). Indeed, on its face, this argument's merit requires a factual determination that is not readily apparent from the Trust's Complaint, and cannot properly be made in the context of a Rule 12(b)(6) motion to dismiss. That fact notwithstanding, KPMG does not—and cannot—offer any support for its opinion other than a single parenthetical cite to a California state-court case that considered only "whether and to what extent an accountant's duty of care in preparation of an independent audit of a client's financial statements extends to persons other than the client." *See* KPMG Br. at 23 (relying on *Bily v. Arthur Young & Co.*, 834 P.2d 745 (Cal. 1992)).

The *Bily* court's statement that "[t]he unqualified audit report of a CPA firm . . . is often an admission ticket to venture capital markets" was not, as KPMG suggests, intended to establish a litmus test—*i.e.*, that only a company with an unqualified audit opinion can obtain venture capital. *Bily*, 834 P.2d at 751. Rather, taken in the context of the court's discussion entitled "The Audit Function in Public Accounting," there can be no question that the court's dicta was merely intended to serve as a backdrop for its consideration of the real issue in the *Bily* case, which was whether third party investors could recover from auditors under a general negligence theory. *See id.* at 747, 749-52. Lacking any legal or factual support for its contention that

additional financing was not available to AstroPower, or that AstroPower could obtain such

financing only upon receipt of an unqualified opinion, KPMG cannot prevail on its Motion on

those bases.[12]

      **b.**    **The Trust's Complaint sets forth sufficient allegations to support its claim that KPMG's failure to comply with its contractual and professional obligations under its pre-2002 contracts caused damage to AstroPower.**

KPMG also cannot prevail on its alternative theory that the "Trust's 'deepening

insolvency' theory of damages is [] unsustainable" because "'deepening insolvency' is not

recognized as a cause of action under Delaware law[.]" KPMG Br. at 25. Setting aside the fact

that KPMG ignores the relevant distinction between a *cause of action* and a *measure of damages*

and, thus, impermissibly conflates the two concepts, KPMG's argument fails for a more

fundamental reason: Despite KPMG's unequivocal representations to the contrary, it is still "an

open question whether Delaware will recognize a separate cause of action for deepening

insolvency[.]" *Rafool v. The Goldfarb Corp. (In re Fleming Packaging Corp.)*, 351 B.R. 626,

636 (Bankr. C.D. Ill. 2006). *But see Trenwick Am. Litig. Trust v. Ernst & Young*, 906 A.2d 168,

174 (Del. Ch. 2006) (declining "to embrace deepening insolvency as a cause of action"). This is

---

[12] This fact is not altered by the sound bite KPMG lifts from *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005). *See* KPMG Br. at 24 ("Such a theory of liability admits of almost no stopping point; "[i]t would permit a plaintiff with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence."). Indeed, the statement from *Dura*—a securities fraud action involving a particularized statutory framework requiring elements of proof not required under traditional tort and contract law—KPMG's selective quote must be considered in the context of the Supreme Court's express recognition that, so long as the a complaint provides the defendant with "some indication of economic loss and the causal connection that the plaintiff has in mind," dismissal is inappropriate under the federal rules' liberal pleading standard. *Id.* (emphasis added). Because the *Dura* plaintiff "nowhere [] provide[d] the defendants with notice of what the relevant economic loss might be or of what the causal connection might be between the loss and the [company's] misrepresentation," the Supreme Court held that the plaintiff's complaint was legally insufficient. *Id.* at 347-48. Here, however, the Trust's Complaint provides KPMG with ample notice of its wrongful conduct— *e.g.*, contractual breaches, professional malpractice and negligence, *see generally* discussion *supra* Part III—and the damages resulting from such conduct—including but not limited to: (i) the sharp decline in AstroPower's stock price resulting from KPMG's accounting and oversight errors and (ii) AstroPower's ultimate collapse into bankruptcy, *see generally* Compl. at 3-5.

so because "[o]nly the Delaware Supreme Court may speak definitively on this issue" and, as of yet, it has not done so. *Rafool,* 351 B.R. at 636 n.3.     Moreover, federal courts sitting in Delaware have expressly concluded that a claim for deepening insolvency is cognizable under Delaware law.[13]     *OHC Liquidation Trust,* 340 B.R. at 535; *Official Comm. of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Techs., Inc.),* 299 B.R. 732, 744 (Bankr. D. Del. 2003).     Accordingly, KPMG did not—and cannot—establish as a matter of law that the Trust can prove no set of facts consistent with the allegations in its Complaint that would deny them relief under any theory of deepening insolvency—particularly, as here, when its seeks such relief merely as a measure of damages, as opposed to an independent cause of action.     This conclusion is not altered by KPMG's illogical attempt to create an inconsistency in the Trust's damage models.

According to KPMG, the Trust's claim for damages resulting from KPMG's conduct that led to AstroPower's bankruptcy is inconsistent with the Trust's claim for damages based on KPMG's conduct that led to AstroPower's deepening insolvency.     KPMG Br. at 21-22.     The fallacy of KPMG's "conflict theory" is easily revealed when viewed outside KPMG's tortured construction of the Trust's Complaint.     Indeed, when viewed in the Trust's favor, the alleged facts suggest that KPMG's pre-2002 Audit conduct caused AstroPower to spiral downward into insolvency.     Compl. ¶¶ 32-57.     When KPMG had the ability to help AstroPower recover, rather than do so, KPMG imposed impossible and unreasonable requirements on AstroPower, and then

---

[13]  Here, it is important to iterate that the Trust is not asserting a <u>cause of action</u> for deepening insolvency, but rather is relying on the deepening insolvency theory as a <u>measure of damages</u>.  To the extent Delaware recognizes a claim for deepening insolvency, it follows that it would also recognize damage resulting from a company's deepening insolvency.  But the opposite is not necessarily true—*i.e.,* even if the Delaware Supreme Court ultimately rejects deepening insolvency as a cause of action, such a decision would not necessarily foreclose the theory as a measure of damages.  *See OHC Liquidation Trust,* 340 B.R. at 528 (recognizing distinction between deepening insolvency as a cause of action and a measure of damages).  To the extent that KPMG would assert that its deepening insolvency could not have resulted in harm to AstroPower, the Trust notes that the Third Circuit has expressly rejected such a claim.  *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co. (In re Walnut Equipment Leasing Co., Inc.),* 267 F.3d 340, 350-51 (3d Cir. 2001).

used AstroPower's alleged failure to complete such requirements as a reason for abandoning AstroPower without ever providing AstroPower the auditing services it needed to survive. *Id.* ¶¶ 58-72. At least one federal court has recognized that there is nothing inconsistent or improper with such a damage model. *See OHC Liquidation Trust*, 340 B.R. at 532 (Bankr. D. Del. 2006) ("[T]he complaint states that the [complained of conduct] not only 'deepened the insolvency of the Debtors but, eventually drove them into bankruptcy.' . . . Depending upon the circumstances, these two theories are not inconsistent.").

### 2. KPMG's Imputation Argument Lacks any Factual or Legal Basis and, Therefore, Cannot Support its Motion to Dismiss.

According to KPMG, the Trust's claims fail for the additional and independent reason that "[e]lementary and well-settled principles of imputation cut off any causal connection between KPMG's [] conduct and AstroPower's [] damages." KPMG Br. at 26. Initially, it is important to note that "[t]he liberal standard that governs a motion to dismiss has particular relevance to imputation cases because [d]eciding whether to permit an auditor to utilize imputation requires a detailed factual analysis of the dispute." *NCP Lit. Trust v. KPMG LLP*, 901 A.2d 871, 878 (N.J. 2006). That fact notwithstanding, here, KPMG's entire imputation argument is built around a single factual premise that is directly contrary to the Trust's pleaded facts. According to KPMG, AstroPower knew about the KPMG-caused "accounting irregularities[] since its own senior management was responsible for them." KPMG Brief at 26. The Trust's Complaint, however, avers in clear and unequivocal terms that "KPMG's role in AstroPower's improper revenue recognition, asset valuation, and other accounting practices prevented AstroPower's management . . . from being able to discover and correct the misstatements." Compl. ¶ 72 (emphasis added). Accepting the Trust's contention as true and drawing all reasonable inferences in its favor—as is required under Rule 12(b)(6)—it cannot be

assumed that, prior to being told differently by KPMG, AstroPower's management was aware of any problems the financial statements KPMG prepared and certified as being accurate. Absent any reason to know KPMG's financial statements were inaccurate, AstroPower's management did not have any such knowledge that could be imputed to AstroPower. And, without such knowledge, KPMG lacks any factual basis to supports its legal imputation argument.

> a.    **KPMG cannot rely on agency imputation principles to avoid liability for its wrongful conduct because KPMG is not an innocent third party.**

Even assuming, however, that certain AstroPower managers knew about KPMG's accounting malpractice, KPMG cannot avail itself of the imputation doctrine to avoid liability for its own misconduct. This is so because, as explained below, "the imputation doctrine does not bar . . . recover[y] through a litigation trust against an auditor who was negligent within the scope of its engagement by failing to uncover or report the fraud of corporate officers and directors." *NCP Lit. Trust v. KPMG LLP*, 901 A.2d 871, 873 (N.J. 2006) ("*NCP*").

"The imputation doctrine is derived from common law rules of agency relating to the legal relationship among principals, agents, and third parties." *Id.* at 879. Pursuant to these rules, a principal is charged with notice of facts known to its agent. *Id.*; *see also* RESTATEMENT (THIRD) OF AGENCY § 5.03 (2006); RESTATEMENT (SECOND) OF AGENCY § 272 (1958). A principal, however, "is not normally charged with the knowledge of an agent that he, the agent, has committed unauthorized act." RESTATEMENT (SECOND) OF AGENCY § 280 (1958) (reporter's notes). Although sometimes referred to by different names—*e.g.*, imputation, constructive knowledge, constructive notice—the doctrine's purpose is the same: "to protect innocent third parties with whom an agent deals on the principal's behalf." *NCP Lit. Trust v. KPMG LLP*, 901 A.2d at 879; *see also Mut. Life Ins. Co. v. Hilton-Green*, 241 U.S. 613, 622 (1916) ("The general rule which imputes an agent's knowledge to the principal is well established. The underlying

reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest.") (emphasis added). Importantly, "imputation is invocable to protect the innocent, never to promote an injustice." *NCP Lit. Trust v. KPMG LLP*, 901 A.2d at 881 (internal quotations omitted).

In cases like this, the rationale underlying the imputation doctrine breaks down. Indeed, "KPMG is not a victim of [a] fraud in need of protection." *Id.* at 882. Rather, to the extent any fraud existed, KPMG was an active participant in such fraud. *See, e.g.*, Compl. ¶ 72 ("KPMG's role in AstroPower's improper revenue recognition, asset valuation, and other accounting practices prevent AstroPower's management . . . from being able to discover and correct the misstatement."). Accordingly, "[a]llowing KPMG to avoid liability for its [wrongful] conduct would not promote the purpose of the imputation doctrine—to protect the innocent." *NCP Lit. Trust v. KPMG LLP*, 901 A.2d at 882. Instead, it would simply permit KPMG to shield itself from liability for its own failure to discover and report inaccuracies in AstroPower's financial records.[14]

> **b.     Even if the imputation doctrine were found to be applicable, Delaware's application of the adverse interest exception *a fortiori* precludes imputing knowledge of any financial accounting fraud to the Trust.**

Assuming for argument's sake that KPMG was an innocent third party, it still could not rely on the imputation doctrine to defeat the Trust's claims at this early pleading stage. Under

---

[14] The Restatement specifically recognizes that an auditor such as KPMG cannot rely on the imputation rule when sued by its former client for audit deficiencies:

> For example, principal may retain a service provider to assess the accuracy of its financial reporting or the adequacy of its internal financial controls or other internal processes, such as its processes for reporting and investigating complaints of harassment in the workplace. If the service provider fails to detect or report deficiencies, the principal's claim against the service provider should not be defeated by imputing to the principal its agents' knowledge of deficiencies in the processes under scrutiny.

RESTATEMENT (THIRD) OF AGENCY § 5.05 cmt. b ("Justifications for imputation; limitations on relevance of imputation").

what is known as the "adverse interest exception," a corporation's officers' or agents' knowledge will not be imputed to the corporation when such officers or agents are acting "in a transaction in which [they are] personally or adversely interested or [are] engaged in the perpetration of an independent fraudulent transaction, where the knowledge relates to such transaction and it would be to [their] interest to conceal it." *In re HealthSouth Corp. Shareholders Lit.*, 845 A.2d 1096, 1108 n.22 (Del. Ch. 2003). Under Delaware law, "[w]hen corporate fiduciaries—such as [the corporation's] managers—have a self-interest in concealing information—such as the falsity of the financial statements that they helped prepare—their knowledge cannot be imputed to the corporation." *Id.* (emphasis added).

Here, though, that is exactly the argument KPMG attempts to make: "The imputation of the accounting fraud, first from AstroPower's senior management to AstroPower itself, and then from AstroPower to the Trust, defeats essential elements of the Trust's [] claims against KPMG." KPMG Brief at 28. Though KPMG cites numerous cases in alleged support of its position, none are from Delaware. Thus, even assuming KPMG's cited authority supports its application of the adverse interest exception, none are controlling in this case. *See O'Melveny & Myers v. Fed. Deposit Ins. Corp.*, 512 U.S. 79, 83-85 (1994) (recognizing application of the imputation doctrine is a matter of state law). And, as evidenced above, Delaware will not impute to AstroPower its corporate managers' knowledge, if any, about fraudulent financial statements that they helped prepare. *In re HealthSouth Corp. Shareholders Lit.*, 845 A.2d at 1108 n.22. Accordingly, KPMG's contrary assertion simply cannot be sustained.

c.  **Moreover, even if the imputation doctrine were found to be applicable, the fact-intensive inquiry necessary to determine whether the adverse interest exception can be invoked precludes resolution of the issue by KPMG's Motion.**

But even if the imputation doctrine were applicable to the facts of this case, KPMG still could not prevail on its Motion. The rationale underlying the adverse interest exception's application is that knowledge should not be imputed to a corporation if its officers or agents acquired such knowledge while acting adversely to the corporation and for their own or another's purposes. *See McNamara v. PFS (In re Personal & Business Ins. Agency)*, 334 F.3d 239, 243 (3d Cir. 2003); *see also* RESTATEMENT (THIRD) OF AGENCY § 5.04 (2006); RESTATEMENT (SECOND) OF AGENCY § 282 (1958). Here, the from the facts alleged in the Complaint, it cannot be determined whether AstroPower's managers were acting: (i) adversely to the corporation or (ii) for their own or another's purposes. Because these highly fact-intensive issues cannot be resolved without resorting to facts and evidence outside the Trust's Complaint, KPMG is not entitled to dismissal under Rule 12(b)(6). *Cf. Stanziale v. McGldrey & Pullen, LLP (In re Student Fin. Corp.)*, 2006 U.S. Dist. LEXIS 56759, at *9 (D. Del. Aug. 10, 2006) ("Whether [the auditor's] relationship with SFC was sufficiently close so as to subject to relationship to scrutiny is a fact intensive inquire that can be addressed after the factual record has been developed.").

**D.  Properly Limited to the Trust's Complaint, KPMG Has Not—and Cannot—Establish Its *In Pari Delicto* Affirmative Defense.**

"*In pari delicto* is an affirmative defense that a court generally should not consider on a motion to dismiss." *Id.*, at *6. A court, therefore, should not grant dismissal unless "the affirmative defense appears on the face of the complaint." *Id.* (emphasis added). To establish its *in pari delicto* affirmative defense, KPMG must show that: (i) as a direct result of its own actions, AstroPower bears at least <u>substantially equal </u>responsibility for the violations its seeks to

redress, and (ii) preclusion of AstroPower's suit would not significantly interfere with an important public policy. *See Pinter v. Dahl*, 486 U.S. 622, 635-38 (1988).

> Here, as the sole support for its affirmative defense, AstroPower asserts:

> According to the Complaint, AstroPower had a "lack of internal controls" and that control and accounting systems "were deficient and/or wholly inaccurate." Complaint ¶¶ 38-39. AstroPower's records were "rife with accounting misstatements including the improper recognition of revenues, deficient and incorrect or incomplete documentation or contracts evidencing purported sales transactions, and a host of other issues that painted a financial picture . . . that was facially wrong." *Id.* ¶ 40. AstroPower also engaged in numerous fraudulent revenue recognition practices." *See id.* ¶¶ 46-48.

KPMG Brief at 30. These practices, KPMG asserts, "make AstroPower *in pari delicto* with KPMG." *Id.*

Besides omitting key portions of the quoted phrases, in making this argument, KPMG completely ignores the Trust's repeated and unequivocal assertions that, among other things: (i) AstroPower's accounting practices and treatment were "suggested and consistently blessed by KPMG"; (ii) for years, KPMG failed "to notify the Company, its Board management, and shareholders of [] crucial accounting and, consequently, reporting errors"; and (iii) KPMG's role in AstroPower's improper revenue recognition, asset evaluation, and other accounting practices prevented AstroPower's management, and the independent members of the [B]oard and the Audit Committee from being able to discover and correct the misstatements." Compl. ¶¶ 38, 48, 57, 72. These conveniently disregarded facts leave little doubt that KPMG, not AstroPower, bears the bulk (substantially more than equal) of the blame for any problems with AstroPower's accounting practices, procedures, and resulting financial statements. Accordingly, it is simply

not possible for KPMG to establish—from the face of the complaint—that the *in pari delicto* affirmative defense bars the Trust's claims.[15]

Moreover, even if applicable, it is far from certain that KPMG could rely on the *in pari delicto* defense. As set forth in the Trust's Complaint, KPMG has had a long and close relationship with AstroPower. *See generally* Compl. ¶¶ 25-31. Indeed, during is decade-long relationship with AstroPower, KPMG was more than just AstroPower's auditor; KPMG acted as AstroPower's accountant and financial consultant. *E.g.*, Compl. ¶ 83. KPMG was also instrumental in recommending and implementing the accounting practices and procedures at issue. *E.g.*, Compl. ¶ 58. Whether KPMG's relationship with AstroPower was "sufficiently close so as to subject the relationship to scrutiny is a fact intensive inquiry that [should] be addressed after the factual record has been developed." *See Stanziale*, 2006 U.S. Dist. LEXIS 56759, at *9. Accordingly, dismissal at this stage is improper.

E.    **The Trust's Complaint Alleges Sufficient Facts to Support its Gross Negligence and Exemplary Damages Claims.**

KPMG contends that "AstroPower's claims of negligence are general and conclusory, providing no specific allegations of what KPMG did, did not do, or should have done differently." KPMG Brief at 32. KPMG asserts, therefore, that the Trust's gross negligence and exemplary damages claims should be dismissed. KPMG Brief at 32-33. In an attempt to support its position that the Trust must plead more specific facts, KPMG quotes a personal injury case involving a jury's $250,000 punitive damage award. KPMG Brief at 31 (citing *Jardel Co. v. Hughes*, 523 A.2d 518, 530 (Del. 1987)). *Hughes*, however, is plainly inapposite because the

---

[15] As a means of trying to circumvent its burden of establishing its *in pari delicto* affirmative defense, KPMG argues that "the Trust stands in the shoes of AstroPower, and there can be no question that any misconduct on the part of AstroPower must be imputed to the Trust." KPMG Brief at 30. Although the Trust does not dispute that it stands in AstroPower's shoes, as demonstrated above, there is substantial dispute about whether and under what circumstances knowledge of AstroPower's managers can be imputed to AstroPower and, consequently, the Trust. *See* discussion *supra* Part C.

issue in that case was not whether the plaintiff's complaint pleaded facts sufficient to withstand a motion to dismiss, but rather whether sufficient evidence existed to support the jury's punitive damage award. *See Hughes*, 523 A.2d at 533 ("We are of the view [] that, as a matter of law, plaintiff failed to present evidence sufficient to establish a basis for the award of punitive damages.").

More importantly, and despite KPMG's contrary assertion, Delaware does not have a heightened pleading standard for gross negligence *vis-à-vis* negligence. *See Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.*, 2005 Del. Super. LEXIS 57, at * 11 (Del. Super. Ct. Feb. 23, 2005). Rather, negligence and gross negligence are subject to the same pleading standard because "[m]alice, intent, knowledge and other condition[s] of mind of a person may be averred generally." *Id.* (quoting Delaware Superior Court Rule 9(b)). And, whether KPMG acted with the requisite intent to support the Trust's gross negligence and punitive damage claims, is a fact question for the jury, not an issue to be resolved in a motion to dismiss under Rule 12(b)(6).[16] *See id.* at *12 (noting that the issue of whether facts and circumstances amount to gross negligence is generally a fact question for the jury).

**F.    The Trust has Pleaded A Viable Unjust Enrichment Claim that Is Not Subject to Dismissal.**

Delaware courts have long recognized that "an unjust enrichment claim is not to be dismissed because it is pled in the alternative to the breach of contract claim."[17] *Breakaway Solutions, Inc. v. Morgan Stanley & Co. Inc.*, 2004 Del. Ch. LEXIS 125, at *56 (Del. Ch. Aug.

---

[16] KPMG wrongly suggests that punitive damages are not available in a breach of contract action like this one. *See* KPMG Brief at 32 n.18. Indeed, more than ten years ago, the Delaware Supreme Court expressly recognized that, "[i]n actions arising ex contractu, punitive damages may be assessed if the breach of contract is characterized by willfulness or malice." *Littleton v. Young*, 1992 Del. LEXIS 15, at *6 (Del. Jan. 2, 1992).

[17] Though *Breakaway* involves the application of New York law, other Delaware courts have recognized the same principle under Delaware law. *E.g.*, *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 Del. Ch. LEXIS 133, at *28 (Del. Ch. Aug. 26, 2005) ("In some circumstances, alternative pleading allows a party to seek recovery under theories of contract or quasi-contract.").

27, 2004). Indeed, alternative pleading is expressly permitted if "there is doubt as to the enforceability or meaning of the terms of the contract in question." *Id.* Here, although the various audit agreements primarily govern the parties' relationship, the parties dispute the scope of such agreements, particularly with respect to the duties KPMG owed to AstroPower. Thus, the Trust plead its unjust enrichment claim "[i]n the alternative, and/or with respect to conduct not governed by the existence of an express contract." Compl. ¶ 95. Because such pleading is proper, KPMG is not entitled to dismissal of the Trust's unjust enrichment claims. *See Breakaway Solutions, Inc.*, 2004 Del. Ch. LEXIS 125, at *56.

**G.    The Trust has Pleaded A Viable Equitable Subordination Claim that Is Not Subject to Dismissal.**

The Trust's Complaint includes fourteen paragraphs of allegations explaining the basis of its equitable subordination claims. *See* Compl. ¶¶ 100-114. KPMG does not address even one of these allegations. *See* KPMG Brief at 34. Instead, relying on nothing more than its say-so, KPMG baldly asserts that the Trust's equitable subordination claim should be dismissed because "there is no causal link between KPMG's alleged conduct and any harm to AstroPower or AstroPower's creditors." KPMG Brief at 34. As recognized by KPMG, this is the exact same argument it made in seeking dismissal of the Trust's breach of contract, professional malpractice, and negligence claims. KPMG Brief at 34. That argument fails here for the same reasons. *See generally* discussion *supra* Part B. Accordingly, KPMG is not entitled to dismissal of the Trust's equitable subordination claim.

# V.
## CONCLUSION

KPMG, as movant, bears the burden of demonstrating beyond doubt that the Trust can prove no set of facts in support of its claims that would entitle the Trust to relief. Despite KPMG's impermissible attempts to contradict the Trust's pleaded facts and rely on evidence outside of the Trust's Complaint, KPMG did not—and cannot—meet its substantial burden. Accordingly, for these reasons and those set forth above, KPMG's Motion should be denied.[18]

Respectfully submitted,
February 16, 2007

LANDIS RATH & COBB LLP

Daniel B. Rath (No. 3022)
Kerri K. Mumford (No. 4186)
James S. Green, Jr. (No. 4406)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, Delaware 19899
(302) 467-4400 (telephone)
(302) 467-4450 (facsimile)

- and –

MUNSCH HARDT KOPF & HARR, P.C.
Phil C. Appenzeller, Jr. (Tex. Bar No. 24003710)
Ross H. Parker (Tex. Bar No. 24007804)
David Mizgala (Tex. Bar No. 24031594)
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
(214) 855-7500 (telephone)
(214) 855-7584 (facsimile)

Counsel to the AstroPower Liquidating Trust

---

[18] Although the Trust believes that it has fully and adequately pled all of the elements of its claims against KPMG, if the court determines that the Trust has not adequately pleaded its claims, the Trust hereby requests leave to amend the Complaint. Because such an amendment would not be futile, the Court should allow the Trust to amend. *See, e.g., Hart v. Bayer Corp.*, 199 F.3d 239, 248 (5th Cir. 2000) (recognizing that a court should not dismiss a claim without granting leave to amend where the defect is curable and the plaintiff has not been afforded any prior opportunity to amend); *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (noting if a more carefully crafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action).

## CERTIFICATE OF SERVICE

I, James S. Green, Jr., hereby certify that on this 16th day of February 2007, I caused a

true and correct copy of *Plaintiff's Response In Opposition to Defendant's Motion to Dismiss* to

be filed with the Clerk of the Court using CM/ECF, which will send notification that such filing

is available for viewing and downloading to the following counsel of record:

 Daniel Bartley Rath (rath@lrclaw.com)
 Maribeth Leslie Minella (bank@ycst.com)
 Kerri King Mumford (mumford@lrclaw.com)
 Phil C. Appenzeller, Jr. (pappenzeller@munsch.com)
 Ross H. Parker (rparker@munsch.com)
 David Mizgala (dmizgala@munshc.com)

I further certify that I have served the parties listed on the service list below in the

manner indicated:

Michael D. Warden, Esq.
David S. Petron, Esq.
Sidley Austin LLP
1501 K. Street, N.W.
Washington, DC 20005
*First Class Mail*

John T. Dorsey, Esq.
Maribeth L. Minella, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
*Hand Delivery*

Joseph Warganz, Esq.
Associate General Counsel
KPMG LLP
757 Third Avenue
New York, NY 10017
*First Class Mail*

James S. Green, Jr. (No. 4406)