UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ASTROPOWER LIQUIDATING TRUST, f/k/a
ASTROPOWER, INC.,

Plaintiff,

vs.

KPMG LLP,

Defendant.

Civil Action No. 06-469 (JJF)

## REPLY BRIEF AND APPENDIX IN SUPPORT OF DEFENDANT KPMG LLP'S MOTION TO DISMISS

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John T. Dorsey (No. 2988)
Maribeth L. Minella (No. 4185)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

- and -

Joseph Warganz
Associate General Counsel
KPMG LLP
757 Third Avenue
New York, NY 10017

SIDLEY AUSTIN LLP
Michael D. Warden
David S. Petron
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

Dated: March 13, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   THE RECORD ON THIS MOTION .......................................................................... 2

III.  ARGUMENT ............................................................................................................. 4

    A.    KPMG's Withdrawal from the Engagement to Audit AstroPower's December 31, 2002 Financial Statements and Refusal to Opine on Those Fraudulent Financial Statements Did Not Breach Any Contractual or Professional Duty. ........................................................................ 4

    B.    For the Pre-2002 Financial Statement Audits, AstroPower's Causal Theory of Deepening Insolvency Is Legally Flawed and Contradicted by Its Own Allegations. ....................................................................................... 10

    C.    AstroPower's Undisputed Fraud Is Imputed to the Trust and Defeats the Trust's Claims Against KPMG. ....................................................................... 13

    D.    The *In Pari Delicto* Doctrine Bars the Trust's Claims Against KPMG. ......... 16

    E.    AstroPower Provides No Valid Reasons Its Other Claims Should Survive. .............................................................................................................. 18

    F.    Repleading Will Not Rescue AstroPower's Fundamentally Flawed Case. ................................................................................................................... 19

IV.   CONCLUSION ........................................................................................................ 20

APPENDIX ................................................................................................................... C-1

# TABLE OF AUTHORITIES

## CASES

*Albert* v. *Alex. Brown Mgmt. Servs., Inc.*,
Nos. 762-N, 763-N, 2005 Del. Ch. LEXIS 133 (Del. Ch. Aug. 26, 2005) .....................................19

*Aspen Advisors LLC* v. *United Artists Theatre Co.*,
843 A.2d 697 (Del. Ch.), *aff'd*, 861 A.2d 1251 (Del. 2004) ............................................................6

*Baena* v. *KPMG LLP*,
453 F.3d 1 (1st Cir. 2006) ........................................................................................................17, 18

*Bellanca Corp.* v. *Bellanca*,
169 A.2d 620 (Del. 1961) ..............................................................................................................15

*Board of Trs. of Bricklayers & Allied Craftsmen* v. *Wettlin Assocs., Inc.*,
237 F.3d 270 (3d Cir. 2001) .............................................................................................................2

*Breakaway Solutions, Inc.* v. *Morgan Stanley & Co.*,
No. 19522, 2004 Del. Ch. LEXIS 125 (Del. Ch. Aug. 27, 2004) ..................................................19

*Brown* v. *Interbay Funding, LLC*,
417 F. Supp. 2d 573, 579 (D. Del.), *aff'd*, 198 Fed. App'x 223 (3d Cir. 2006) .............................7

*Browne* v. *Robb*,
583 A.2d 949 (Del. 1990) ...............................................................................................................19

*In re CITX Corp., Inc.*,
448 F.3d 672 (3d Cir. 2006) ...........................................................................................................11

*Falkenberg Capital Corp.* v. *Dakota Cellular, Inc.*,
925 F. Supp. 231, 236 (D. Del. 1996) ..............................................................................................3

*Fleck* v. *KDI Sylvan Pools, Inc.*,
981 F.2d 107, 113 (3d Cir. 1992) ...................................................................................................11

*In re Fleming Packaging Corp.*,
351 B.R. 626 (Bankr. C.D. Ill. 2006) .............................................................................................12

*First State Underwriters Agency of New England Reins. Corp.* v. *Travelers Ins. Co.*,
803 F.2d 1308 (3d Cir. 1986) .......................................................................................................5, 6

*Hartman* v. *Pathmark Stores, Inc.*,
No. 05-403-JJF, 2006 WL 571852 (D. Del. Mar. 8, 2006) ...........................................................17

*In re HealthSouth Corp. Shareholders Litig.*,
845 A.2d 1096 (Del. Ch. 2003)...............................................................................13, 14

*In re Ikon Office Solutions, Inc.*,
277 F.3d 658 (3d Cir. 2002)..............................................................................................7

*Jablonski v. Pan Am. World Airways, Inc.*,
863 F.2d 289 (3d Cir. 1988)............................................................................................20

*In re LJM2 Co-Inv., L.P.*,
866 A.2d 762 (Del. Ch. 2004)..........................................................................................16

*Massarsky* v. *General Motors Corp.*,
706 F.2d 111 (3d Cir. 1983)............................................................................................20

*MBIA Ins. Corp.* v. *Royal Indem. Co.*,
426 F.3d 204 (3d Cir. 2005)..............................................................................................6

*Morse* v. *Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997)............................................................................................15

*NCP Litig. Trust* v. *KPMG LLP*,
901 A.2d 871 (N.J. 2006)................................................................................................13

*Norfleet* v. *Mid-Atl. Realty Co.*,
No. 95C-11-008 WLW, 2001 Del. Super. LEXIS 357 (Del. Super. Ct. Apr. 20, 2001) .................7

*In re Oakwood Homes Corp.*,
340 B.R. 510 (Bankr. D. Del. 2006) ...........................................................................12, 13

*Official Comm. of Unsecured Creditors* v. *R.F. Lafferty & Co.*,
267 F.3d 340 (3d Cir. 2001)............................................................................................16

*Pension Benefit Guar. Corp.* v. *White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1995)............................................................................................2

*Pinter* v. *Dahl*,
486 U.S. 622 (1988)...................................................................................................16, 17

*In re Radnor Holdings Corp.*,
353 B.R. 820 (Bankr. D. Del. 2006) ...........................................................................11, 12

*Satellite Fin. Planning Corp.* v. *First Nat'l Bank of Wilmington*,
633 F. Supp. 386 (D. Del. 1986).....................................................................................15

*In re Student Fin. Corp.*,
335 B.R. 539 (D. Del. 2005)........................................................................12

*In re Student Fin. Corp.*,
No. 02-11620 (DDS), 2006 U.S. Dist. LEXIS 56759 (D. Del. Aug. 10, 2006) ...........................18

*Teachers' Ret. Sys. of La. v. Aidinoff*,
900 A.2d 654 (Del. Ch. 2006)........................................................................13, 15

*Trenwick Am. Litig. Trust  v. Ernst & Young*,
906 A.2d 168, 204-205 (Del. Ch. 2006) ...........................................................11

*U.S. ex rel. Grynberg v. Ernst & Young LLP*,
323 F. Supp. 2d 1152 (D. Wyo. 2004)........................................................................17

*United States v. Arthur Young & Co.*,
465 U.S. 805 (1984)........................................................................7

## REGULATION

Rule 1-01 of Regulation S-X, 17 C.F.R. § 210.1-01(a)(2) ...........................................................10

## OTHER AUTHORITIES

*Administrative Policy on Financial Statements*, SEC Accounting Series Release No. AS-4 (Apr.
25, 1938), *available at* 1938 WL 33319 ...........................................................10

AICPA, Codification Statements of Auditing Standards, AU § 110 ...........................................................7

AICPA, Codification Statements of Auditing Standards, AU § 230 ...........................................................8

AICPA, Codification Statements of Auditing Standards, AU § 317 ...........................................................9

AICPA, Codification Statements of Auditing Standards, AU § 341 ...........................................................10

AICPA, Codification Statements of Auditing Standards, AU § 508 ...........................................................9

*Certification of Income Statements*, SEC Accounting Series Release No. AS-90 (Mar. 9, 1962),
*available at* 1962 WL 68430 ...........................................................10

*Codification of Staff Accounting Bulletins* § 1E.2, *available at*
http://www.sec.gov/interps/account/sabcodet1.htm#1e (last visited Mar. 8, 2007)...............10

Defendant KPMG LLP ("KPMG") respectfully submits this reply brief in support of its Motion to Dismiss the Amended Complaint ("Complaint" or "Compl.") [D.I. No. 9].

## I.    PRELIMINARY STATEMENT

In its Opposition [D.I. No. 17] ("Opp."), AstroPower raises a host of arguments as to why this Court either should decline to reach the merits of KPMG's motion to dismiss or, should it reach the merits, deny that motion. AstroPower's arguments range from accusing KPMG of improperly going outside the pleadings by attaching the very contract on which AstroPower relies (Opp. at 7-8) to urging this Court to follow New Jersey law (*id.* at 22-24) rather than the controlling authority cited by KPMG. In this reply brief, KPMG walks through each of AstroPower's arguments one-by-one, showing that none of them has merit.

Notwithstanding the myriad issues raised in the parties' briefs, this remains a simple case and a simple motion. There is a clear and unobstructed path for the Court to grant KPMG's motion with respect to (1) KPMG's incomplete audit of AstroPower's December 31, 2002 financial statements and (2) its completed audits for AstroPower's December 31, 2001 and earlier financial statements. First, with respect to the incomplete December 31, 2002 audit, there is no question that KPMG discovered AstroPower's revenue recognition fraud during the course of that audit work and that the explicit terms of KPMG's Engagement Letter and its professional obligations authorized KPMG to withdraw from the engagement and to decline to issue an audit opinion. KPMG simply did not breach any duty. Second, for audits before 2002, AstroPower's sole theory of causation and damages is deepening insolvency. Both the Third Circuit and Delaware courts have rejected that theory, and AstroPower offers no legitimate reason why this Court should not follow suit. Resolution of these two straightforward legal issues (and, for that matter, the other issues raised by KPMG's motion) does not require the Court to resolve any disputed issues of fact. KPMG's motion should be granted.

## II.    THE RECORD ON THIS MOTION

No party disputes that, in considering a motion to dismiss, the Court must accept all *well-pleaded* allegations in the Complaint as true and draw all *reasonable* inferences in the light most favorable to the plaintiff. *See* KPMG Brief at 14 [D.I. No. 10] ("KPMG Br."); Opp. at 7; *Board of Trs. of Bricklayers & Allied Craftsmen* v. *Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (3d Cir. 2001). Consistent with this standard, KPMG's motion is based solely on (1) the allegations in AstroPower's Complaint [D.I. No. 6] and (2) a limited number of other documents that this Court is indisputably permitted to consider at this stage. KPMG attached to its Motion the actual Engagement Letter between AstroPower and KPMG on which AstroPower relies (A-5 to A-11), certain of AstroPower's public SEC filings (A-1 to A-4; A-12 to A-23), and AstroPower's Disclosure Statement filed with the Bankruptcy Court (A-24 to A-30).

In urging the Court to ignore these documents, AstroPower asserts the general legal principle that a court "cannot look beyond the face of the pleadings" on a motion to dismiss. Opp. at 7. Beyond the citation to this general principle, however, AstroPower never even discusses, much less contests, the settled law cited by KPMG that permits the Court to consider such documents on a motion to dismiss. *See* KPMG Br. at 3 n.3, 7 n.6 (citing cases). There can be no dispute that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp.* v. *White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1995). In its Opposition, AstroPower does not dispute the authenticity of any of the documents cited by KPMG, and its reliance on the general principle that a court cannot look beyond the allegations of a complaint on a 12(b)(6) motion does it no help here.

Likewise, AstroPower repeatedly invokes the Rule 12 standard that this Court must accept its allegations as true as if that automatically insulates its Complaint from meaningful

review by this Court. It does not. Faced with the plain language of the Engagement Letter and AstroPower's allegations regarding that letter, this Court need not accept AstroPower's characterizations of or its legal conclusions regarding that contract. *See Falkenberg Capital Corp.* v. *Dakota Cellular, Inc.*, 925 F. Supp. 231, 236 (D. Del. 1996) (court considering motion to dismiss does not accept as true non-moving party's "construction" of unambiguous contract language, which is for the court). Similarly, this Court is fully empowered to look at AstroPower's SEC filings for purposes of this Motion, particularly when AstroPower paraphrases those filings in its Complaint. Settled law and fundamental fairness dictate no less.

According to AstroPower, application of the broad, generalized principles it cites means that this Court should ignore KPMG's "factual recitation [as] completely irrelevant." *See* Opp. at 7 n.3. In fact, that "recitation" relies on information that is both permissibly considered on a motion to dismiss and essential to an understanding of this case. The following are just some aspects of that "recitation" that are based on AstroPower's own factual allegations and the documents it cites to or quotes from in the Complaint:

- AstroPower's management was engaged in a revenue recognition fraud (Compl. ¶¶ 32-57);

- In March 2003, during the course of KPMG's audit of AstroPower's December 31, 2002 financial statements, KPMG discovered that fraud and reported it to AstroPower's Audit Committee (*id.* ¶ 33);

- AstroPower publicly announced that because of these revenue recognition issues, its unaudited quarterly financial statements for 2002 contained material misstatements (*id.* ¶ 16; Form 12b-25 at A-13);

- After KPMG identified additional concerns with AstroPower's accounting, the Audit Committee hired independent counsel and forensic accountants to investigate these issues (Compl. ¶ 35);

- The preliminary results of this investigation confirmed the fraud, and AstroPower's CEO and CFO both resigned by May 2003 (*id.* ¶¶ 35, 40, 63; *see also* Revised Disclosure Statement § 2.4.8 (A-28));

3

- By November 2003, AstroPower was insolvent (Compl. ¶¶ 115, 118);

- In December 2003, KPMG resigned from the engagement (*id.* ¶ 71).

Although AstroPower now wishes that these facts were "irrelevant," nowhere in its Opposition does AstroPower contend that KPMG has somehow miscited or misconstrued these facts.

In other respects, AstroPower's Opposition attempts to distance itself from or flat out contradicts the allegations in its Complaint. For example, AstroPower now asserts that it was somehow driven into bankruptcy in 2003 by KPMG's allegedly excessive fees or "the countless man hours diverted from AstroPower's actual business endeavors." Opp. at 10. This stitched-together theory appears nowhere in the Complaint. AstroPower cites to paragraphs 69 and 71, *see id.* at 10-11, but those paragraphs contain no such allegations. In fact, the Complaint's allegations regarding the December 31, 2002 audit are that KPMG allegedly damaged AstroPower by refusing to provide it with an audit opinion. *See, e.g.*, Compl. ¶¶ 16-23, 69. Even worse, AstroPower's new excessive fees theory is flatly contradicted by the Complaint's allegation that AstroPower stiffed KPMG for nearly $600,000 that remained unpaid when AstroPower filed for bankruptcy. *See id.* ¶ 70; KPMG Br. at 10 n.9, 17 n.10.

In short, instead of standing on its Complaint, AstroPower's response to many of KPMG's arguments has been to flee from its own allegations. When construed fairly and in context, the Complaint's allegations demonstrate that AstroPower's claims must be dismissed.

## III.    ARGUMENT

### A.    KPMG's Withdrawal from the Engagement to Audit AstroPower's December 31, 2002 Financial Statements and Refusal to Opine on Those Fraudulent Financial Statements Did Not Breach Any Contractual or Professional Duty.

KPMG had a right to withdraw. During its audit of AstroPower's December 31, 2002 financial statements, KPMG (1) discovered that management had engaged in fraud, (2) reported

that fraud to the Audit Committee, (3) refused to opine on those fraudulent financial statements, and (4) ultimately withdrew from the engagement. AstroPower now complains because KPMG did precisely what its contract and professional standards permitted it to do: withdraw from the AstroPower audit. *See* Compl. ¶ 80; Opp. at 11. But the Engagement Letter for the December 31, 2002 audit is clear and unambiguous: "Circumstances may arise in which it is necessary for us to modify our report or *withdraw from the engagement*." Engagement Letter at A-6 (emphasis added). "If the language is unambiguous, interpretation of the contract is a matter of law for the court." *First State Underwriters Agency of New England Reins. Corp.* v. *Travelers Ins. Co.*, 803 F.2d 1308, 1311 (3d Cir. 1986). AstroPower does not argue that this language is ambiguous, and it does not offer any alternative construction of this language. There is none. KPMG's contract with AstroPower permitted it to withdraw from the 2002 audit, a point which AstroPower now concedes. *See* Opp. at 10 (KPMG's withdrawal from the audit "may not support a breach of contract claim against KPMG").

AstroPower's only response is to try to amend that contractual language. Thus, AstroPower alternatively contends that "the agreement certainly contemplates that, in return for the amounts it received, KPMG would issue an opinion" (*id.*) or that the language should be rewritten so that KPMG must have had an "adequate basis to withdraw." *See id.* at 11. These arguments are easily disposed of. It is black letter law that the intention of the parties (or what they "certainly contemplate") is set forth in the language of the agreement. *See MBIA Ins. Corp.* v. *Royal Indem. Co.*, 426 F.3d 204, 210 (3d Cir. 2005) (unambiguous written agreements are the best evidence of the intentions of the parties and should be enforced according to their terms); *Aspen Advisors LLC* v. *United Artists Theatre Co.*, 843 A.2d 697, 704-05 (Del. Ch.) ("When the words of a contract . . . are plain and unambiguous, binding effect should be given to their

evident meaning, . . . . as the language of the contract itself obviously expresses the intentions of the contracting parties."), *aff'd* 861 A.2d 1251 (Del. 2004). Even assuming that AstroPower had paid KPMG the $600,000 that it owes it for the 2002 audit, the Engagement Letter does not promise that KPMG would provide an opinion in "return for the amounts it receives." Likewise, the Engagement Letter does not specify that there must be an "adequate" predicate for KPMG's withdrawal (and even if it did, the discovery of a management fraud is plainly such an adequate basis). The contract between KPMG and AstroPower does not contain this language, and AstroPower cannot create an ambiguity where none exists. In the absence of any contractual ambiguity, AstroPower's claim fails. *First State Underwriters*, 803 F.2d at 1311.

AstroPower's negligence-based malpractice claims based on the incomplete 2002 audit fail for the same reason—KPMG's alleged breach of duties is fully consistent with unambiguous professional standards. With respect to the December 31, 2002 financial statement audit, AstroPower's only allegations are that KPMG violated its professional duties under Generally Accepted Accounting Standards ("GAAS") by (1) failing to provide AstroPower with an audit opinion and (2) withdrawing from the AstroPower engagement. *See* Compl. ¶¶ 84, 89. KPMG's professional duties as set forth in GAAS mirror perfectly the language in the Engagement Letter. GAAS, like the Engagement Letter, explicitly permits an auditor to withdraw and decline to issue an opinion. *See* AICPA, Codification of Statements on Auditing Standards ("AU") § 317.20, 317.22 (A-74); KPMG Br. at 5.

Notably, AstroPower does *not* contend that KPMG has cited the wrong professional standards or somehow misread or misapplied those standards to conclude that its claims based on the 2002 incomplete audit should be dismissed. Rather, it asserts that "the applicable professional standard of care is determined by the local community where the conduct occurred"

(Opp. at 14), that "whether KPMG complied with the applicable standard of care is an issue that can only be properly resolved by expert testimony" (*id.*), and that KPMG's reliance on the AICPA GAAS standards "is not only improper, but unavailing." *Id.* at 14 n.9. Each of these contentions is wrong. First, there is no question that GAAS governs here. AstroPower's Complaint could not be more clear that GAAS applies. *See* Compl. ¶ 27 (citing GAAS as governing standard); ¶ 28 ("KPMG's duties included . . . the duty to audit . . . in accordance with GAAS . . . ."). Second, GAAS establishes national standards. Contrary to AstroPower's suggestion, there is no such thing as "Delaware" or "local" GAAS. As the Supreme Court has observed, "'Generally accepted auditing standards' are promulgated by a committee of the public accounting profession's *national* organization, the American Institute of Certified Public Accountants (AICPA)." *United States* v. *Arthur Young & Co.*, 465 U.S. 805, 811 n.6 (1984) (emphasis added).[1]  Third, expert testimony is not required to resolve the issues presented by KPMG's Motion. This Court no more needs an expert to read and apply the unambiguous GAAS standards that apply here than it would need a contract expert to read the unambiguous language of a contract or a statutory construction expert to read a statute.[2]  Courts routinely rely on and apply AICPA standards. *See, e.g.*, *In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 663 n.2 (3d Cir. 2002); *id.* at 670 n.12. As a matter of law, AstroPower simply cannot establish that

---

[1] Thus, AstroPower's citations to real estate cases requiring local standards are inapposite. *See Norfleet* v. *Mid-Atl. Realty Co.*, 2001 Del. Super. LEXIS 357, at *13-*14 (Del. Super. Ct. Apr. 20, 2001); *Brown* v. *Interbay Funding, LLC*, 417 F. Supp. 2d 573, 579 (D. Del.), *aff'd*, 198 Fed App'x 223 (3d Cir. 2006).

[2] To be sure, resolution of some issues under GAAS may require expert testimony. For example, one of the general standards of GAAS provides that "Due professional care is to be exercised in the planning and performance of the audit and the preparation of the report." AU § 230.01 (A-34). A determination whether an audit was conducted with due professional care may require expert testimony, but that issue is *not* raised by KPMG's Motion.

7

KPMG breached its professional obligations under GAAS with respect to the 2002 financial statement audit because GAAS allows KPMG to act as it did.[3]

KPMG had no obligation to issue an unqualified audit opinion. The gravamen of AstroPower's causal theory with respect to the 2002 financial statement audit is that "KPMG never completed its audit of the Company's 2002 financials. KPMG's failure to do so caused the company's ultimate demise." Compl. ¶ 23. Thus, according to AstroPower, "debt and equity would have been available to AstroPower; but only if the Company could provide audited financials." Id. ¶ 69; Opp. at 17-18. In its opening brief, KPMG demonstrated that AstroPower's own theory depended on showing that the debt and equity markets would have been open to it in 2003 if KPMG provided an *unqualified* audit opinion that AstroPower's December 31, 2002 financial statements were fairly presented in accordance with generally accepted accounting principles ("GAAP")—and that KPMG had no duty to provide such an unqualified opinion. KPMG Br. at 23-24. Now, in a remarkable about-face from its theory as alleged in its Complaint, AstroPower concedes that KPMG had no obligation to issue an unqualified audit opinion on those financial statements (Opp. at 10) and instead contends that when it said "audited financials" in its Complaint, it meant *any* audit opinion from KPMG—*i.e.* even an adverse opinion, a qualified opinion or a report that *disclaims* an opinion. *Id.* at 9 n.7, 10, 19. But AstroPower's new interpretation requires the Court to make an inference from the facts alleged in AstroPower's Complaint that is not only unreasonable but also illogical.

---

[3] AstroPower wrongly accuses KPMG of ignoring its allegations of "*ten* separate actions taken by KPMG that would violate its professional obligations to AstroPower." Opp. at 15 & n.10. For example, paragraph 84(e) of the Complaint alleges that KPMG breached its duties by "[c]ertifying AstroPower's financial statements as true" when they were not. This and most of AstroPower's other alleged breaches of duties pertain to alleged GAAS violations for *completed* audits prior to December 31, 2002. *See* Compl. ¶ 84. For the allegations that do relate to the incomplete 2002 audit, KPMG squarely addressed those. *See* KPMG Br. at 16-19; *supra* at 4-8.

AstroPower's interpretation of its allegations has two components:  (1) AstroPower was entitled to "audited financials" that included *some* form of audit report from KPMG—whether it was an adverse opinion or disclaimer of opinion purportedly does not matter—and (2) AstroPower could have taken those "audited financials"—irrespective of the type of opinion it received—to potential lenders or investors who would have provided additional funding to AstroPower in reliance on the accuracy of those financial statements.  The problem with AstroPower's latest interpretation of "audited financials," however, is that, to a financial statement user like a lender or investor, only an *unqualified* audit opinion from an independent auditor that it had audited AstroPower's financial statements in accordance with GAAS and that those financial statements were fairly presented in accordance with GAAP would have satisfied the requirement for "audited" financials sufficiently reliable to lend or invest.  Without such an audit report from an independent auditor, potential lenders or investors could not know whether AstroPower's financial statements fairly presented the financial position of the Company.  Put another way, "audited" financial statements without a clean opinion are no more useful to a lender or investor than *unaudited* financial statements.  Thus, the only plausible reading of "audited financials," as plead by AstroPower, would be financial statements on which KPMG had issued an *unqualified* audit report.  It is therefore unreasonable to infer, as AstroPower urges, that debt and equity would have been available to AstroPower if KPMG had issued something other than an unqualified audit report—either an adverse opinion on the financial statements, or a disclaimer of opinion stating "the scope of our work was not sufficient to enable us to express, and we do not express, an opinion on these financial statements."  AU § 508.63 (A-105).

KPMG's common sense interpretation of AstroPower's own allegation is confirmed by other aspects of its theory, indicating that AstroPower was harmed because it was unable to meet

its SEC filing requirements because it had no "audited financials." *See* Compl. ¶¶ 17-18. For a public company like AstroPower, "audited financials" can mean *only* an *unqualified* audit opinion. From the inception of the federal securities laws, the SEC has required an unqualified audit opinion on financial statements filed as part of a public company's Form 10-K.[4] Unless AstroPower received an unqualified audit opinion—which its own fraud precluded—its financial statements would not have met the requirements of the SEC's rules, and it could not have become current on its filings and raised the public debt and equity it claims would have saved it.[5]

### B.    For the Pre-2002 Financial Statement Audits, AstroPower's Causal Theory of Deepening Insolvency Is Legally Flawed and Contradicted by Its Own Allegations.

In its Complaint, AstroPower alleges a single causal theory with respect to KPMG's audit work on financial statements prior to 2002, namely, that KPMG's alleged failures caused "AstroPower [to] further deepen[] its insolvency." Compl. ¶ 43. This theory of damages, however, is legally invalid because the Third Circuit has held that "deepening insolvency is not a valid theory of damages for negligence." *In re CITX Corp., Inc.*, 448 F.3d 672, 681 (3d Cir.

---

[4] *See Administrative Policy on Financial Statements*, SEC Accounting Series Release No. AS-4 (Apr. 25, 1938), *available at* 1938 WL 33319, at *1 (C-1). "If, as a result of the conclusions reached, the accountant is not in a position to express an affirmative opinion as to the fairness of the presentation of earnings year by year, the registration statement is defective because the certificate does not meet the requirements of Rule 2-02 of Regulation S-X [17 C.F.R. § 210.2-02(b)]." *Certification of Income Statements*, SEC Accounting Series Release No. AS-90 (Mar. 9, 1962), *available at* 1962 WL 68430, at *3 (C-3). *See also Codification of Staff Accounting Bulletins* § 1E.2, *available at* http:www.sec.gov/interps/account/sabcodet1.htm#1e (last visited Mar. 8, 2007) (unqualified audit opinion is required). Regulation S-X applies to annual and other reports filed with the SEC. *See* Rule 1-01 of Regulation S-X, 17 C.F.R. § 210.1-01(a)(2).

[5] Any audit report KPMG could have issued prior to withdrawing would have, at best, contained a qualification that KPMG had been unable "to apply all the procedures [it] consider[ed] necessary in the circumstances." AU § 508.22 (A-93) (describing scope limitations). If KPMG had issued such an audit opinion qualified as to scope, then AstroPower's financial statements would have been deficient under the federal securities laws, and for that reason AstroPower would not have been able to file a Form 10-K. *See Codification of Staff Accounting Bulletins*, *supra* note 4, § 1E.2.

2006). Similarly, a recent Delaware Bankruptcy Court decision found "deepening insolvency to be an impermissible measure of damages." *In re Radnor Holdings Corp.*, 353 B.R. 820, 849 (Bankr. D. Del. 2006). Because deepening insolvency is not a recognized theory of damages, the Court should dismiss AstroPower's claims based on pre-2002 conduct.

AstroPower's brief simply ignores these authoritative cases; they are never cited, let alone distinguished. Instead, it tries to avoid the real issue by emphasizing the difference between deepening insolvency as a theory of damages and as a cause of action, accusing KPMG of "ignoring" this distinction, and suggesting that AstroPower has alleged deepening insolvency as a cause of action. *See* Opp. at 20. None of these devices saves its claims based on the pre-2002 audits. As an initial matter, KPMG squarely observed and applied in its brief the distinction between deepening insolvency as a theory of damages and as a cause of action, noting that neither can be sustained under Delaware law. *See* KPMG Br. at 24-25. More significantly, AstroPower has not alleged deepening insolvency as a cause of action, and it cannot recast its Complaint now. Finally, even if it had pled such a claim, AstroPower's argument that it remains an open question whether Delaware will recognize deepening insolvency as a separate cause of action, Opp. at 20-21, is both beside the point and wrong.[6] On the issue raised by its Complaint, AstroPower simply has no answer; its claims based on deepening insolvency damages fail.

---

[6] Although the Delaware Supreme Court has not yet passed on the question, the Delaware Chancery Court has rejected deepening insolvency as a cause of action. *Trenwick Am. Litig. Trust* v. *Ernst & Young*, 906 A.2d 168, 204-205 (Del. Ch. 2006). In the absence of a Delaware Supreme Court decision on this question, federal courts in the Third Circuit are obliged to rely on *Trenwick*'s persuasive discussion in predicting how the Delaware Supreme Court might decide this issue. *See Fleck* v. *KDI Sylvan Pools, Inc.*, 981 F.2d 107, 113 (3d Cir. 1992). The various cases AstroPower cites in which federal courts sitting in Delaware have found a claim for deepening insolvency cognizable under Delaware law all predate *Trenwick* and are therefore unpersuasive predictions of Delaware law on this issue. As for *In re Fleming Packaging Corp.*, 351 B.R. 626 (Bankr. C.D. Ill. 2006), that decision does not opine one way or the other on

Even if deepening insolvency damages were available, AstroPower's allegations are fundamentally inconsistent with that theory. Deepening insolvency purports to measure the difference in value between what creditors would have received if the debtor had filed for bankruptcy at some earlier time, compared to the value to creditors given the actual date of bankruptcy. *See Radnor Holdings*, 353 B.R. at 849. The notion behind this damages theory is that a bankrupt enterprise should have wound up its affairs sooner, and that the enterprise was damaged "through the wrongful expansion of corporate debt and prolongation of corporate life beyond insolvency." *In re Student Fin. Corp.*, 335 B.R. 539, 547 (D. Del. 2005). A wrongful prolongation of corporate life, however, is *not* what AstroPower alleges, nor could it. AstroPower alleges that KPMG caused it to lose access to capital and debt that it needed to *continue* its operations; thus, AstroPower was allegedly wronged by being prevented from prolonging its corporate life. *See* Compl. ¶¶ 17-18, 69. Factual allegations that AstroPower was prevented from prolonging its life cannot logically support damages for deepening insolvency.

AstroPower's only real response to KPMG's argument that its allegations are inconsistent is to contend that its two causal theories—that (1) KPMG's withdrawal from the 2002 engagement and failure to provide an opinion on AstroPower's financial statements caused its bankruptcy (Compl. ¶ 23), while (2) KPMG's alleged pre-2002 errors "deepened its insolvency" (Compl. ¶ 43)—in fact work together. To support this remarkable proposition, it relies on dicta in *In re Oakwood Homes Corp.*, 340 B.R. 510 (Bankr. D. Del. 2006), in which the court "imagined" a situation in which a defendant "damage[s] a debtor's business so irreparably that the corporation would eventually have to petition for bankruptcy. The defendant's actions could *then* artificially prop-up the debtor, delaying the bankruptcy." *Id.* at 532 (emphasis added).

---

whether Delaware would recognize a deepening insolvency cause of action, so it adds no support to AstroPower's argument.

Here, AstroPower alleges events that are exactly *backwards* from the hypothesized sequence in *Oakwood Homes*. On the one hand, AstroPower alleges that it could have been saved had KPMG issued an opinion on its December 31, 2002 financial statements. *See* Compl. ¶ 23. On the other hand, AstroPower claims that alleged problems with KPMG's pre-2002 audits somehow "further deepened its insolvency," when under its own theory it was not yet insolvent and could have yet been saved. AstroPower's allegations make no sense.

C.    **AstroPower's Undisputed Fraud Is Imputed to the Trust and Defeats the Trust's Claims Against KPMG.**

This Court need go no further to dismiss all of AstroPower's tort and contract claims. Additionally, however, all of AstroPower's causal theories are flawed because they depend upon the notion that AstroPower would have somehow acted differently if it had known about the accounting fraud committed by its own senior management. But AstroPower *did* know about the fraud because the knowledge of those senior managers is imputed to AstroPower. To support this proposition, KPMG cited in its brief the "general rule" of Delaware law "that knowledge of an officer or director of a corporation will be imputed to the corporation." *Teachers' Ret. Sys. of La.* v. *Aidinoff*, 900 A.2d 654, 671 n.23 (Del. Ch. 2006); *see also* KPMG Br. at 26 (citing cases). Rather than address these authoritative Delaware cases, AstroPower chose to ignore them.

Instead, AstroPower devotes nearly three pages of its brief to a New Jersey decision. However much AstroPower may like the opinion in *NCP Litig. Trust* v. *KPMG LLP*, 901 A.2d 871, 878 (N.J. 2006), New Jersey law cannot possibly apply to this case, and Delaware law is to the contrary. Next, AstroPower completely misreads *In re HealthSouth Corp. Shareholders Litig.*, 845 A.2d 1096 (Del. Ch. 2003), on the scope of the adverse interest exception to the doctrine of imputation. As KPMG explained in its opening brief, the adverse interest exception may apply in cases that involve looting or misappropriation of corporate assets where the

conduct of an officer is "adverse" to corporate interests. KPMG Br. at 27. Fraudulent financial reporting, however, generally benefits the corporation and therefore does not implicate the adverse interest exception to the imputation doctrine. *See id.* And AstroPower itself alleges that it benefited from the fraud by being able to raise capital based on the phony strength of its financial results. *See, e.g.*, Compl. ¶ 15 (AstroPower raised $30 million in March 2001).

In response, AstroPower quotes out of context a snippet from a footnote in *HealthSouth* and then inflates that quotation into a supposedly general proposition of Delaware law that the adverse interest exception always applies where corporate officers prepare false financial statements. *See* Opp. at 25. *HealthSouth* stands for no such thing. Simply reading all of that footnote demonstrates that AstroPower grossly misstates the law. *See, e.g., HealthSouth*, 845 A.2d at 1108 n.22 ("'An exception to the general rule that the knowledge of an officer or agent will be imputed to the corporation arises when an officer . . . is acting in a transaction in which *he is personally or adversely interested* or is *engaged in the perpetration of an independent fraudulent transaction*, where the knowledge relates to such transaction and it would be in his interest to conceal it.'" (quoting 18B Am.Jur.2d *Corporations* § 1680 (2003)) (omission in original) (emphases added)). This exception does not apply here. First, *HealthSouth* involved a dispute between a corporation and one of its officers, not a third party. As such, it is simply another example of the rule that imputation or *in pari delicto* defenses do not apply "in situations when corporate fiduciaries seek to avoid responsibility for their own conduct *vis-à-vis their corporations*." *Id.* at 1107 (emphasis added) (citing cases). Second, *HealthSouth* involved a transaction between the corporation and the corporate officer where they were adverse to one another. Here, in contrast, there is no independent transaction for the benefit of AstroPower's

senior management that could give senior management a *self-interested* (and hence adverse) reason for concealing AstroPower's fraudulent financial statements.

AstroPower also repeats its "highly fact-intensive" mantra with respect to the adverse interest exception. Opp. at 26. As a general rule, however, "[k]nowledge and actions of a corporation's agent ordinarily are imputed to the corporation when the agent acts on the corporation's behalf." *Satellite Fin. Planning Corp.* v. *First Nat'l Bank of Wilmington*, 633 F. Supp. 386, 400 (D. Del. 1986). If there were *any* specific facts even suggesting that AstroPower's senior executives were acting adversely to the company when they perpetrated their fraud, then AstroPower should have (and undoubtedly would have) alleged them in its Complaint. By admitting that its Complaint does not provide even an inference that AstroPower's senior executives were acting for their own self-interest, AstroPower has essentially conceded that the adverse interest exception does not apply in this case.

Stripped of its legal inaccuracies, AstroPower's entire argument on imputation thus comes down to a single allegation: that KPMG somehow "prevented AstroPower's management . . . from being able to discover and correct the misstatements." Compl. ¶ 72. This Court need not accept this naked and self-serving assertion, *see Morse* v. *Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), especially as it is directly contrary to Delaware principles of imputation. The misstatements in question appeared in AstroPower's financial statements, which are the responsibility of AstroPower's management. *See* Engagement Letter at A-6; AU § 110.03 (A-31). AstroPower's senior management perpetrated and thus knew about the fraud in the financial statements, and that knowledge is chargeable to AstroPower. *See Bellanca Corp.* v. *Bellanca*, 169 A.2d 620, 625 (Del. 1961); *Aidinoff*, 900 A.2d at 671 n.23. Whether KPMG's alleged conduct prevented other corporate officers from discovering the misstatements is beside the

point, because the fraudsters inside AstroPower knew the facts, and their knowledge is imputed to the Company.[7] AstroPower can no more plead away the legal doctrine of imputation than it could plead away the requirement of proximate cause.

### D.    The *In Pari Delicto* Doctrine Bars the Trust's Claims Against KPMG.

AstroPower's responses to KPMG's *in pari delicto* defense are flawed for many of the same reasons its imputation arguments fail. As an initial matter, AstroPower incorrectly asserts that KPMG's relative fault must be balanced against that of AstroPower. To the contrary, in the Third Circuit, "a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim." *Official Comm. of Unsecured Creditors* v. *R.F. Lafferty & Co.*, 267 F.3d 340, 354 (3d Cir. 2001); *accord In re LJM2 Co-Inv., L.P.*, 866 A.2d 762, 775 (Del. Ch. 2004) (applying same standard under Delaware law). No balancing is required or permitted. Because AstroPower's senior management engaged in an accounting fraud, AstroPower unquestionably bears fault for its own demise.

Even if the Court were to apply the balancing test advocated by AstroPower, the *in pari delicto* doctrine still requires dismissal of the Complaint because AstroPower bears *at least substantially equal* responsibility for the accounting fraud. *See Pinter* v. *Dahl*, 486 U.S. 622, 635-36 (1988) (applying balancing test). AstroPower claims that KPMG "bears the bulk (substantially more than equal) of the blame for any problems with AstroPower's accounting practices, procedures, and resulting financial statements." Opp. at 27. This is a legal conclusion

---

[7] If AstroPower's view of imputation were the law, no corporation could ever be liable for fraud, either criminally or civilly, because management's fraudulent conduct would never be imputed to the corporation. In almost every case involving a corporate fraud, the managers who perpetrate the fraud will (at least temporarily) prevent others inside the corporation from discovering and stopping the fraud. If so doing were sufficient to prevent knowledge of the fraud from being imputed to the corporation, then knowledge of a fraud would *never* be imputed to the corporation, and the corporation would never possess the requisite scienter to commit fraud.

the Court need not accept. *See Hartman* v. *Pathmark Stores, Inc.*, No. 05-403-JJF, 2006 WL 571852, at *1 (D. Del. Mar. 8, 2006) (A-127) ("The Court is not required to accept legal conclusions either alleged or inferred from the pleaded facts.") (quoting *Kost* v. *Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993)). Because AstroPower management is responsible for the financial statements, *see* Engagement Letter at A-6; *U.S. ex rel. Grynberg* v. *Ernst & Young LLP*, 323 F. Supp. 2d 1152, 1157 (D. Wyo. 2004), KPMG cannot bear "the bulk" of responsibility for them.

If that were not enough, the other allegations on which AstroPower relies—even taken as true—would not establish that KPMG bears more than substantially equal responsibility for AstroPower's demise. *See* Opp. at 27 (citing Compl. ¶¶ 38, 48, 57, 72). AstroPower cherrypicks from its Complaint, ignoring for this purpose allegations that (1) it engaged in "numerous accounting irregularities," *see* Compl. ¶ 37, (2) its "internal controls and accounting systems were deficient and/or wholly inaccurate," Compl. ¶ 39, and (3) its "financials were rife with accounting misstatements that painted a financial picture for AstroPower that was facially wrong." Compl. ¶ 40. At best, these allegations make out a case that KPMG was *partly*, and certainly *not more* than equally, responsible for AstroPower's accounting problems. In such a case of (at most) a tie, *in pari delicto* applies, and AstroPower's claims against KPMG must be dismissed. *See Pinter*, 486 U.S. at 635-36.

Taking all the allegations in the Complaint as true, this case is on all fours with *Baena* v. *KPMG LLP*, 453 F.3d 1 (1st Cir. 2006), a case which AstroPower again does not even cite much less distinguish. *Baena* involved the same kind of fraudulent financial reporting that AstroPower alleges it committed in its Complaint. *See id.* at 3 (describing accounting fraud). Just as in this case, the senior management of the company resigned after the fraud was exposed. *See id.* And the plaintiff in *Baena* alleged, just as AstroPower does here, that KPMG failed to alert the

company to the fraud perpetrated by its own management. *See id.* at 4.  In *Baena* as in this case, senior management were the primary wrongdoers, whose conduct is imputed to the company. *See id.* at 7.   The district court in *Baena* dismissed the complaint on grounds of *in pari delicto*, and the First Circuit affirmed.  This Court should do likewise.

AstroPower's final remaining argument is that *in pari delicto* does not apply because "KPMG has had a long and close relationship with AstroPower." *See* Opp. at 28.   Although it fails to come right out and say so, AstroPower suggests that KPMG was somehow an "insider" of AstroPower, because "the [i]n pari delicto defense will not operate to bar claims made against insiders of the debtor corporation." *See In re Student Fin. Corp.*, 2006 U.S. Dist. LEXIS 56759, at *6 (D. Del. Aug. 10, 2006).   AstroPower tries a sleight-of-hand with *Student Finance* by claiming that the *in pari delicto* defense can be defeated by simply alleging a "sufficiently close" relationship.  *See* Opp. at 28.   In fact, *Student Finance* reasoned that "the allegations of the Complaint give rise to a possible inference that [the defendant] acted as an insider such that the affirmative defense of in pari delicto may not bar claims against [the defendant]." *Student Finance*, 2006 U.S. Dist. LEXIS 56759, at *7.   AstroPower studiously avoids quoting the complete analysis of *Student Finance*—indeed, it never even uses the word "insider" in its brief—because its Complaint affirmatively alleges that KPMG was *not* an insider.  Taking the allegations of the Complaint as true, KPMG served as AstroPower's "independent" auditor (Compl. ¶¶ 25-26), and throughout the relevant period KPMG remained AstroPower's "outside" auditor (Compl. ¶ 36).   An independent, outside auditor cannot be a corporate insider. AstroPower's argument fails.

### E.    AstroPower Provides No Valid Reasons Its Other Claims Should Survive.

AstroPower's remaining claims are largely derivative of its three principal claims, and AstroPower's brief provides no valid reasons they should not likewise be dismissed.  With

respect to the purported claim for gross negligence, AstroPower ignores *Browne* v. *Robb*, 583 A.2d 949 (Del. 1990), a case in which the Delaware Supreme Court upheld the dismissal of a complaint, like AstroPower's, that simply made conclusory allegations, thereby failing to state a claim that the defendant's conduct was "an extreme" departure from ordinary negligence. *See id.* at 953; *see also* KPMG Br. at 31-33.

On its unjust enrichment claim, AstroPower argues that it can state such a claim as an alternative to its breach of contract claim, yet the very cases on which it relies hold that a plaintiff can do so "only when there is doubt as to the enforceability or meaning of the terms of the contract in question." *Breakaway Solutions, Inc.* v. *Morgan Stanley & Co. Inc.*, 2004 Del. Ch. LEXIS 125, at *56 (Del. Ch. Aug. 27, 2004) (internal quotation marks omitted); *Albert* v. *Alex. Brown Mgmt. Servs., Inc.*, 2005 Del. Ch. LEXIS 133, at *28 (Del. Ch. Aug. 26, 2005) (same). AstroPower has not disputed either the enforceability or the meaning of the terms of its Engagement Letter with KPMG, so it cannot state an unjust enrichment claim as an alternative to its contract claim.

As for the equitable subordination claim, AstroPower does not dispute that, under Third Circuit law, equitable subordination requires a showing that alleged misconduct actually caused an injury. *See* KPMG Br. at 34 (citing Third Circuit cases). Because AstroPower's causal theories completely fail, *see supra* at 8-13, its equitable subordination claim fails as well.

F.    **Repleading Will Not Rescue AstroPower's Fundamentally Flawed Case.**

If the Court grants KPMG's motion to dismiss, it should also deny AstroPower's request to file a second amended Complaint and try again. *See* Opp. at 31 n.18. The defects in AstroPower's complaint are not simply failures to plead enough facts to make out claims against KPMG but are insurmountable theoretical and conceptual problems with the entirety of AstroPower's case. No amount of repleading will let AstroPower escape from the plain

19

language of its Engagement Letter with KPMG or the clear mandate of professional standards. No amount of repleading will fix AstroPower's legally flawed deepening insolvency causal and damages theories. No amount of repleading will avoid the fact that AstroPower's senior management committed a revenue recognition fraud that is imputed to AstroPower. And no amount of repleading will avoid the application of the *in pari delicto* doctrine. Repleading would thus be futile, so leave to amend should be denied. *See Jablonski* v. *Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988); *Massarsky* v. *General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983).

## IV.    CONCLUSION

For all of the above reasons, Counts I through VI of the Complaint should be dismissed.

Respectfully submitted,

Dated:  March 13, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John T. Dorsey (No. 2988)
Maribeth L. Minella (No. 4185)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

- and -

Joseph Warganz
Associate General Counsel
KPMG LLP
757 Third Avenue
New York, NY 10017

SIDLEY AUSTIN LLP
Michael D. Warden
David S. Petron
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

**APPENDIX TO REPLY BRIEF IN SUPPORT OF DEFENDANT KPMG LLP'S
MOTION TO DISMISS**

## **Appendix Contents**

Item                                                                                                    Page

*Administrative Policy on Financial Statements*, SEC Accounting Series Release No. AS-
   4 (Apr. 25, 1938), *available at* 1938 WL 33319 ...................................................................C-1

*Certification of Income Statements*, SEC Accounting Series Release No. AS-90 (Mar. 9,
   1962), *available at* 1962 WL 68430 ......................................................................................C-2

Westlaw.

Release No. AS- 4, 1938 WL 33319 (S.E.C. Release No.)
(Cite as:   Release No. AS- 4, 1938 WL 33319 (S.E.C. Release No.))

Page 1

C

Release No. AS- 4, 1938 WL 33319 (S.E.C. Release No.)

Securities and Exchange Commission

*1 Administrative policy on financial statements.

Accounting Series

April 25, 1938

The Securities and Exchange Commission today issued the following statement of its administrative policy with respect to financial statements:

'In cases where financial statements filed with this Commission pursuant to its rules and regulations under the Securities Act of 1933 or the Securities Exchange Act of 1934 are prepared in accordance with accounting principles for which there is no substantial authoritative support, such financial statements will be presumed to be misleading or inaccurate despite disclosures contained in the certificate of the accountant or in footnotes to the statements provided the matters involved are material.  In cases where there is a difference of opinion between the Commission and the registrant as to the proper principles of accounting to be followed, disclosure will be accepted in lieu of correction of the financial statements themselves only if the points involved are such that there is substantial authoritative support for the practices followed by the registrant and the position of the Commission has not previously been expressed in rules, regulations, or other official releases of the Commission, including the published opinions of its chief accountant.'

Release No. AS- 4, 1938 WL 33319 (S.E.C. Release No.)
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. AS- 90,   Release No. 4458,   Release No. 33-4458, 1962 WL                    Page 2
68430 (S.E.C. Release No.)
(Cite as:  Release No. AS- 90,   Release No. 4458,   Release No. 33-4458, 1962 WL 68430 (S.E.C. Release No.))

C
Release No. AS- 90,   Release No. 4458,   Release
No. 33-4458, 1962 WL 68430 (S.E.C. Release No.)

Securities and Exchange Commission (S.E.C.)

Securities Act of 1933
Accounting Series

*1 Certification of Income Statements
March 9, 1962

It has come to the attention of the Commission that wide variations have developed in certificates of independent accountants contained in registration statements filed under the Securities Act of 1933 with respect to representations concerning the verification of inventories of prior years in first audits.  This development has been noted particularly in situations involving the offering of securities of closely held corporations which have failed to maintain and preserve accounting records and data necessary to permit verification of financial statements.  In some cases a question arises whether the certifying accountant intended to limit his opinion as to the fairness of presentation of the income statements.

The following is the pertinent part of an example of this type of certificate:
    * * * Except as noted in the succeeding paragraph, our examination was made in accordance with generally accepted auditing standards and accordingly included such tests of the accounting records and such other auditing procedures as we consider necessary in the circumstances.
    Since this was our initial examintion of the Financial Statements of the Company, September 30, 1961, was the only date at which we observed the taking of physical inventories. However, based on other tests we applied, including tests of gross profits and review of physical inventory records, we have no reason to believe that inventories at September 30, 1958, 1959, and 1960, were not also fairly stated.
    In our opinion, with the foregoing comment regarding inventories * * *.

In view of the large number of companies which are now offering securities to the public for the first time and which have this problem, the Commission deems it advisable to remind the financial community that the Securities Act requires that registration statements contain a certificate of an independent accountant based on an audit conducted in accordance with generally accepted auditing standards and meeting the reporting requirements of the Commission.

After testimony was taken from twelve expert witnesses called by the Commission in the investigation of McKesson & Robbins, Inc.,[FN1] the membership of the American Institute of Accountants at the 1939 annual meeting approved the extension of auditing procedures to require observation of inventory taking.

In January 1942 the Commission, to avoid any possible interruption in the production and delivery of war material, announced a liberalized policy with respect to physical inventory verification by independent public accountants.  (Accounting Series Release No. 30.)  After specifying information to be furnished in the certificate the release said:
    In many cases, it is probable that by means of their alternative and extended procedures the independent public accountants will have satisfied themselves as to the substantial fairness of the amounts at which inventories are stated, and in such case a positive statement to that effect should be made.  In some cases it may be that, while the scope of procedures followed will not be such as to have so satisfied the accountants, they will be able to take the position that on the basis of the work done they have no reason to believe that the inventories reflected in the statements are unfairly stated.
    *2 Of course, if the scope of the work done or the results obtained from the procedures followed or the data on which to base an opinion are so unsatisfactory to the accountants as to preclude any expression of opinion, or to require an adverse opinion, that situation must be disclosed not only by an exception running to the scope of the audit, but also by means of an exception in the opinion paragraph as to the fairness of the presentation made by the financial statements.  * * *

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. AS- 90,   Release No. 4458,   Release No. 33-4458, 1962 WL                                   Page 3
68430 (S.E.C. Release No.)
(Cite as:  Release No. AS- 90,   Release No. 4458,   Release No. 33-4458, 1962 WL 68430 (S.E.C. Release No.))

In the Drayer-Hanson matter (Accounting Series Release No. 64, March 15, 1948) the accountants' opinion included a now-familiar sentence: 'On the basis of the examinations and tests made by us, we have no reason to believe that the inventories as set forth in the accompanying statements are unfairly stated.' The Commission found in this case that in addition to the work done on the inventories, other effective procedures could have been applied and hence that the representation cited was entirely without justification.

The first-time audit situation was considered in Accounting Series Release No. 62 which dealt with the circumstances under which independent public accountants may properly express an opinion with respect to summaries of earnings. Concluding that the accountant can express an opinion on completion of a first audit, the release said 'It is recognized that some auditing procedures commonly applicable in the examination of financial statements for the latest year for which a certified profit and loss statement is filed, such as the independent confirmation of accounts receivable or the observation of inventory taking, are either impracticable or impossible to perform with respect to the financial statements of the earlier years and, hence, would not be considered applicable in the circumstances.'

The statement in the Commission's release is consistent with interpretations of 'extensions of auditing procedure' approved by the membership of the Institute at the 1939 annual meeting. Such extension of auditing procedures to require observation of inventories and confirmation of receivables applies where either of these assets represents a significant proportion of the current assets or of the total assets of a concern. As to inventories, Codification of Statements on Auditing Procedure says 'The procedures, it will be noted, must be both practicable and reasonable. In the province of auditing, 'practicable' means 'capable of being done with the available means' or '* * * with reason or prudence'; 'reasonable' means 'sensible in the light of the surrounding circumstances.' For example, the observation of physical inventories at the beginning of the period or year under examination would seldom, if ever, be practicable or reasonable in initial or 'first' audits. However, the independent accountant must satisfy himself as to such inventories by appropriate methods.'

It seems clear from the discussion above that if an accountant reports that his examination was made in accordance with generally accepted auditing standards, and accordingly included such tests of the accounting records and such other auditing procedures as he considered necessary in the circumstances, an exception as to failure to observe beginning inventories is contradictory and should be omitted. A middle paragraph explaining that the certificate covers a first audit is informative and in some cases essential to describe the alternative procedures applied. A negative type conclusion to this paragraph appears to be a carryover from wartime usage and is not acceptable. Lost and inadequate records may give rise to questions as to the reliability of the results shown in the financial statements and may make it impracticable to apply alternative audit procedures. Alternative procedures must be adequate to support an unqualified opinion as to the fairness of presentation of the income statements by years.

*3 If, as a result of the examination and the conclusions reached, the accountant is not in a position to express an affirmative opinion as to the fairness of the presentation of earnings year by year, the registration statement is defective because the certificate does not meet the requirements of Rule 2-02 of Regulation S-X (17 CFR 210.2-02). If the accountant is not satisfied with the results of his examination he should not issue an affirmative opinion. If he is satisfied, any reference from the opinion paragraph to an explanatory paragraph devoted solely to the scope of the audit is inconsistent and unnecessary. Accordingly, phrases such as 'with the foregoing explanation as to inventories' raise questions as to whether the certifying accountant intended to limit his opinion as to the fairness of the presentation of the results shown and should be omitted.

A 'subject to' or 'except for' opinion paragraph in which these phrases refer to the scope of the audit, indicating that the accountant has not been able to satisfy himself on some significant element in the financial statements, is not acceptable in certificates filed with the Commission in connection with the public offering of securities. The 'subject to' qualification is appropriate when the reference is to a middle paragraph or to footnotes explaining the status of matters which cannot be resolved at statement date.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. AS- 90,   Release No. 4458,   Release No. 33-4458, 1962 WL          Page 4
68430 (S.E.C. Release No.)
(Cite as:  Release No. AS- 90,   Release No. 4458,   Release No. 33-4458, 1962 WL 68430 (S.E.C. Release No.))


ORVAL L. DUBOIS, *Secretary.*
MARCH 1, 1962.

[F.R. Doc. 62-2366; Filed, Mar. 9, 1962; 8:46 a.m.]

   FN1   See Report on Investigation and Testimony
of Expert Witnesses, G.P.O. 1940 and 1939.


  Release No. AS- 90,   Release No. 4458,   Release
No. 33-4458, 1962 WL 68430 (S.E.C. Release No.)
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Maribeth L. Minella, Esquire, hereby certify that on this 13th day of March

2007, I caused a true and correct copy of the Opening Brief in Support of Defendant KPMG

LLP's Motion to Dismiss to be filed with the Clerk of the Court using CM/ECF, which will send

notification that such filing is available for viewing and downloading to the following counsel of

record:

Daniel Bartley Rath (rath@lrclaw.com)
Maribeth Leslie Minella (bank@ycst.com)
Kerri King Mumford (mumford@lrclaw.com)
Ross H. Parker (rparker@munsch.com)
Phil C. Appenzeller, Jr. (pappenzeller@munsch.com)

I further certify that I have served the parties listed on the service list below in the

manner indicated.

/s/ Maribeth L. Minella
Maribeth L. Minella

Phil C. Appenzeller, Jr., Esq
Ross H. Parker, Esq.
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard, Suite 3800
Dallas, TX 75201
(Astropower Liquidating Trust)
*First Class Mail*

Daniel B. Rath, Esq
Kerri K. Mumford, Esq.
James S. Green, Jr., Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19899
(Atropower Liquidating Trust)
*Hand Delivery*

Michael D. Warden, Esq
David S. Petron, Esq.
Sidley Austin LLP
1501 K. Street, N.W.
Washington, D.C. 20005
(KPMG, LLP)
*First Class Mail*