```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE

ASTROPOWER LIQUIDATING TRUST,   :
f/k/a ASTROPOWER, INC.,         :
                                :
          Plaintiff,            :
                                :
     v.                         :  Civil Action No. 06-469-JJF
                                :
KPMG LLP,                       :
                                :
          Defendant.            :
                                :
```

Phil C. Appenzeller, Jr., Esquire; Ross H. Parker, Esquire and David Mizgala, Esquire of MUNSCH HARDT KOPF & HARR, P.C., Dallas, Texas.
Daniel B. Rath, Esquire; Kerri K. Mumford, Esquire and James S. Green, Jr., Esquire of LANDIS RATH & COBB LLP, Wilmington, Delaware.

Attorneys for Plaintiff.

Michael D. Warden, Esquire and David S. Petron, Esquire of SIDLEY AUSTIN LLP, Washington, D.C.
John T. Dorsey, Esquire and Maribeth L. Minella, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Attorneys for Defendant.

_____

**MEMORANDUM OPINION**

May 25, 2007
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is Defendant KPMG LLP's Motion To Dismiss (D.I. 10). For the reasons discussed, the Court will deny the Motion.

I. BACKGROUND

Plaintiff, the AstroPower Liquidating Trust, is the trustee for the now bankrupt AstroPower, Inc. ("AstroPower" or the "Company"). Plaintiff filed this action against Defendant, KPMG, LLP, AstroPower's auditors, tax consultants and accountants from 1992 until December 2003. By the Amended Complaint, Plaintiff asserts seven causes of action against Defendant: (1) breach of contract (Count I), (2) professional negligence and accounting malpractice (Count II), (3) negligent misrepresentation (Count III), (4) gross negligence (Count IV), (5) unjust enrichment (Count V), (6) equitable subordination (Count VI) and (7) disallowance of Defendant's claims. Plaintiff seeks direct and consequential damages, imposition of a constructive trust over any sums AstroPower paid to Defendant as a result of Defendant's misconduct and disgorgement of those funds, punitive damages and attorneys' fees and costs. (D.I. 6 at ¶¶77 -128.)

Plaintiff's Amended Complaint traces the rise and fall of AstroPower from its initial public offering to its bankruptcy. Plaintiff alleges that in March 2003, Defendant refused to certify AstroPower's 2002 financials causing significant decline

1

in AstroPower's enterprise value and a loss of access to capital and debt markets. (Id. at ¶ 17.) According to AstroPower, the Defendant's accountant responsible for AstroPower was injured in December 2002, and Defendant replaced him with a new accountant who then identified numerous irregularities in the accounting practices used by AstroPower. (Id. at ¶ 33.) Plaintiff contends that AstroPower's accounting practices were implemented at the direction of Defendant. (Id. at ¶ 34.)

As a result of these accounting irregularities and at the suggestion of counsel, AstroPower hired Ernst & Young ("Ernst") to perform a full forensic accounting. AstroPower also retained Hale & Dorr as independent counsel to the Company's Audit Committee. (Id. at ¶ 35.) Plaintiff alleges that Ernst uncovered systemic accounting irregularities that were "symptomatic of a lack of internal controls at the Company and a years-long failure by Defendant to notify the Company, its Board, management, and shareholders of these crucial accounting and, consequently, reporting, errors." (D.I. 6 at ¶ 38). Plaintiff further alleges that "AstroPower's financials were rife with accounting misstatements including the improper recognition of revenues, deficient and incorrect or incomplete documentation or contracts evidencing purported sales transactions and a host of other issues that painted a financial picture for AstroPower that was facially wrong." (Id. at ¶ 40). Defendant was the Company's

auditor at all relevant times, and Plaintiff alleges that Defendant knew, or recklessly ignored, AstroPower's internal control and accounting deficiencies resulting in audit opinions and financial certifications by Defendant that were grossly deficient, inaccurate and unreliable. (Id. at ¶ 39).

Defendant remained as AstroPower's outside auditors during the time that Ernst conducted its investigation. According to Plaintiff, Defendant became concerned about its role in AstroPower's demise and ultimately refused to complete the audit of the 2002 financials that it had been contractually obliged to perform. (Id. at ¶ 58-70.) On December 29, 2003, Defendant terminated its relationship with AstroPower without completing the audit, despite the fees paid by AstroPower. (Id. at 71.) Plaintiff essentially contends that Defendant fired AstroPower as a client to contrive a defense to cover-up its own accounting failures. Plaintiff further contends that these accounting failures caused AstroPower to make critically flawed business decisions, and that Defendant's failure to complete the 2002 audit ultimately caused AstroPower's demise. (Id. at 72.)

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, a court must accept as true all

allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. The burden of demonstrating that the plaintiff has failed to state a claim upon which relief may be granted rests on the movant.

As a general matter, a court may not consider matters outside the pleadings when adjudicating a motion to dismiss. However, a court may consider "document[s] integral to or explicitly relied upon in the complaint" without converting a motion to dismiss to a motion for summary judgment. In re Rockefeller Center Properties, Inc. Securities Litigation, 184 F.3d 280, 287 (3d Cir. 1999).

### III. DISCUSSION

    A.    Whether The Amended Complaint Sufficiently Alleges A Claim For Breach Of Contract

To establish a claim for breach of contract, the plaintiff must demonstrate: (1) the existence of a contract, whether express or implied, (2) the breach of an obligation imposed by that contract, and (3) resulting damages to the plaintiff. VLIW Tech., LLC v. Hewlett-Packard Co., 840 A.2d 606, 612 (Del. 2003). By its Motion, Defendant challenges Plaintiff's ability to establish both a breach of the express contracts and resulting damages.

On the issue of breach, Defendant contends that Plaintiff cannot establish that Defendant breached the terms of the Engagement Letter. Specifically, Defendant directs the Court to

that portion of the Engagement Letter which expressly provides that "[w]e can not provide assurance that an unqualified opinion will be rendered," and "[c]ircumstances may arise in which it is necessary for us to modify our report or withdraw from the engagement." (D.I. 11 (Engagement Letter) at A-6.) Because Defendant could not guarantee an unqualified opinion and could withdraw at any time, Defendant contends that it cannot be responsible for breach of contract. Defendant also contends that it cannot be liable for fees above the estimate it provided because the Engagement Letter further provides that "[c]ircumstances encountered during the performance of these services that warrant additional time or expense could cause us to be unable to deliver them within the above estimates." (Id. at A-10.) Defendant further contends that it can have no liability for failure to report on any lack of internal controls at AstroPower because the Engagement Letter did not contemplate such services.

The Court has reviewed Plaintiff's allegations in light of the standard under Rule 12(b)(6) and in the context of Defendant's argument and concludes that Plaintiff's allegations are sufficient at this juncture to state a claim for breach of contract. First, Plaintiff's claims rest not only upon the terms of the Engagement Letter related to the completion of the 2002 financials, but also upon other pre-2002 contracts for (i)

auditing services, (ii) tax consulting and (iii) other accounting-related advisory services. (D.I. 6 at ¶ 25.) In this regard, Plaintiff alleges that Defendant "breached its contracts with AstroPower by failing to provide the bargained-for services and conduct its audits in accordance with GAAP and GAAS." (Id. at 80.) Plaintiff goes on to identify those services which Defendant allegedly failed to perform.

As for the Engagement Letter, Plaintiff points out that Defendant was required to

> [I]ssue a written report upon our audit of the consolidated balance sheets of AstroPower, Inc. and subsidiaries as of December 31, 2002 and 2001, the related consolidated statements of income and comprehensive income, stockholders' equity and cash flows for each of the years in the three-year period ended December 31, 2002, and schedules supporting such financial statements, all of which are to be included in the annual report (Form 10-K) proposed to be filed by the Company under the Securities Exchange Act of 1934.

(D.I. 11 at A-5.) Plaintiff contends that this paragraph required the issuance of some opinion by Defendant, be it qualified or not, and that Defendant promised it would complete the audit, but failed to do so, even after requiring AstroPower to pay an excessive fee and "jump through certain hoops," like performing additional forensic procedures and terminating the Company's CEO and CFO. Plaintiff further alleges that AstroPower was willing to perform additional measures, but Defendant refused to provide it with requested guidance and ultimately strung

6

AstroPower along causing delays which eliminated AstroPower's access to capital and debt.

As for Defendant's responsibility regarding the reporting of internal control deficiencies at AstroPower, the Court notes that Defendant selectively quotes from the Engagement Letter the following: "[W]e will consider the Company's internal control in order to determine the nature, timing and extent of our audit procedures for the purpose of expressing an opinion on the consolidated financial statements and not to provide assurance on internal control . . . [W]e are not being engaged to report on the Company's internal control . . . ."  (D.I. 10 at 21) (citing D.I. 11 at A-7.)  However, the full context of this quotation which is omitted by Defendant is broader.  Specifically, the Engagement Letter provides:

> While we are not being engaged to report on the Company's internal control and are not obligated to search for reportable conditions, <u>we will communicate reportable conditions to you to the extent they come to our attention.</u>  Reportable conditions are significant deficiencies in the design or operation of internal control which could adversely affect the organization's ability to record, process, summarize and report financial data consistent with the assertions of management in the consolidated financial statements.

(D.I. 11 at A-7).  Thus, contrary to Defendant's assertion, the Engagement Letter does suggest that Defendant had some reporting obligations with respect to the Company's internal controls, and the failure to comply with these reporting obligations is precisely what the Amended Complaint alleges.

Defendant also contends that the accounting deficiencies and errors discovered by its accountants were the fault of AstroPower's management, and therefore, Defendant cannot be held liable for them. However, the issue of the ultimate responsibility for the accounting failures at AstroPower presents a fact issue that is not suitable for resolution on a motion to dismiss. Further, taking the Amended Complaint as a whole, the sum total of Plaintiff's allegations is that Defendant caused, promulgated and condoned the accounting irregularities, and thus, was itself responsible for the very circumstances which prevented it from completing its services under the contract, caused it to have to withdraw from the Engagement Letter, and resulted in the allegedly excessive fees to AstroPower. In these circumstances, the Court concludes that Plaintiff has sufficiently alleged a claim for breach of contract so as to withstand dismissal under Rule 12(b)(6).

As for the issue of causation, Defendant contends that Plaintiff has not sufficiently alleged causation by Defendant of AstroPower's bankruptcy, its deepening insolvency and its other internal problems. Plaintiff responds that it has alleged that "[d]ebt and equity would have been available to AstroPower; but only if the Company could provide audited financials." (D.I. 6 at ¶ 69.) At this stage of the case, the Court concludes that Plaintiff need not prove its allegations, and the allegations in

the Amended Complaint are sufficient to survive a motion to dismiss. See e.g., Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

Defendant also contends that Plaintiff cannot establish causation because AstroPower's management knew of the accounting irregularities that Defendant discovered, and that knowledge is imputed to the Company and now Plaintiff. However, the allegations of Plaintiff's Amended Complaint, which must be accepted as true, aver exactly the opposite, that Defendant's "role in AstroPower's improper revenue recognition, asset valuation and other accounting practices prevented AstroPower's management . . . from being able to discovery and correct the misstatements." (D.I. 6 at ¶ 72) (emphasis added).

In sum, the Court concludes that Plaintiff's allegations are sufficient to plead a claim for breach of contract, and accordingly, the Court concludes that Defendant is not entitled to dismissal of Plaintiff's breach of contract claim.

    B.    Whether The Amended Complaint Sufficiently Alleges A Claim For Professional Negligence

To establish a claim for professional negligence based on accounting malpractice, the plaintiff must demonstrate the traditional negligence elements of duty, breach, causation and damages. By its Motion, Defendant contends that Plaintiff cannot establish that Defendant breached its professional duty and cannot establish causation. The Court has previously discussed

the issue of causation in the context of Plaintiff's breach of contract claim and concluded that Plaintiff's allegations are sufficient to allege causation. As for the elements of duty and breach, the Court likewise concludes that Plaintiff's allegations are sufficient to withstand dismissal. The Amended Complaint alleges that AstroPower and Defendant had a professional relationship spanning ten years and that during that relationship, Defendant was required to exercise its professional judgment in connection with certain auditing functions. The Amended Complaint further alleges that Defendant breached its professional duties by condoning and/or recommending revenue recognition practices that were not compliant with GAAP and GAAS, inventory valuation that was incorrect, and improper accounting treatment for equipment under construction. The Amended Complaint goes on to allege, among other things, that Defendant (1) failed to audit AstroPower's financial statements and prepare reports with the appropriate level of skill and diligence, (2) failed to adequately advise, inquire into or investigate accounting and financial information, (3) failed to properly advise AstroPower's Management, Board of Directors, Audit Committee and shareholders of the lack of internal controls and accounting irregularities of which Defendant was aware or should have been aware; (4) failed to inquire into suspect transactions or take steps to inform management about them; (5) certified

financial statements as true and accurate when they knew or should have known they were not; (6) and failed to complete AstroPower's 2002 year-end financial audit.

Defendant's argument that it did not breach its professional obligations is the same argument it made with respect to its breach of contract claims, i.e. that Defendant was not required to issue an unqualified audit opinion and was allowed to withdraw from its engagement with AstroPower under the terms of the Engagement Letter. The Court has concluded that Defendant is not entitled to dismissal on these grounds. Accordingly, the Court concludes that Plaintiff has sufficiently stated a claim for breach of professional negligence, and therefore, Defendant is not entitled to dismissal of this claim.

    C.    <u>Whether The Amended Complaint Should Be Dismissed Under The Doctrine Of In Pari Delicto</u>

<u>In pari delicto</u> is an equitable doctrine providing "that a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim." <u>Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.</u>, 267 F.3d 340, 354 (3d Cir. 2001). To establish the defense of <u>in pari delicto</u>, the defendant must demonstrate that (1) as a direct result of its own actions, the plaintiff bears at least substantially equal responsibility for the violations it seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the law and other important public

policies. Pinter v. Dahl, 486 U.S. 622, 645-638 (1988).

The doctrine of in pari delicto may be applied against a bankruptcy trustee standing in the shoes of the wrongdoing debtor. However, the doctrine is an affirmative defense that should not be considered on a motion to dismiss, unless it appears on the face of the complaint. In re Student Finance, 2006 WL 2346373, *2 (D. Del. Aug. 10, 2006).

Reviewing the allegations of the Amended Complaint in the light most favorable to Plaintiff, the Court concludes that the affirmative defense of in pari delicto is not apparent on the face of the Amended Complaint. Plaintiff has alleged that Defendant "suggested and consistently blessed" the accounting practices that AstroPower utilized and that Defendant failed to notify the Company, its Board or its shareholders about these errors and essentially prevented the Company from being able to discover those mistakes and correct them. In the Court's view, these allegations place the responsibility for AstroPower's flawed accounting practices squarely on Defendant. Accordingly, the Court concludes, that Defendant is not entitled to dismissal of the Amended Complaint under the doctrine of in pari delicto.

D. Whether The Amended Complaint Sufficiently Alleges A Claim For Gross Negligence And Exemplary Damages

Gross negligence is considered a "higher level of negligence representing 'an extreme departure from the ordinary standard of care.'" Browne v. Robb, 583 A.2d 949, 953 (Del. 1990) (quoting

W. Prosser, Handbook of the Law of Torts 150 (2d ed. 1955)). In this regard gross negligence requires "more than ordinary inadvertence or inattention." Jardel Co. v. Hughes, 523 A.2d 518, 530 (Del. 1987). Allegations of gross negligence can support a claim for punitive damages if the conduct alleged is extreme and reckless indifference to the rights of others has also been pled. Id. Allegations of "mere inadvertence, mistake, or errors of judgment will not suffice." Id.

By its Motion, Defendant contends that Plaintiff cannot state a claim for gross negligence, because it has failed to plead its allegations with specificity. Defendant contends that Plaintiff's general averments that the negligence was intentional or reckless are insufficient to state such a claim and that Defendant does not have fair notice of the grounds upon which the claim of gross negligence rests.

Although the circumstances giving rise to Plaintiff's negligence claim must be pled with particularity, conditions of mind like malice, intent, knowledge and recklessness may be averred generally. See Del. Super. Ct. R. 9(b); Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co., 2005 WL 445710, *4 (Del. Super. Feb. 23, 2005). In this case, the Court concludes that Plaintiff's allegations satisfy this pleading requirement. Plaintiff has alleged specific failures by Defendant concerning its professional duties to AstroPower, and

13

Plaintiff has averred that Defendant's alleged negligence was "intentional, the result of recklessness, the result of or [sic] conscious indifference to AstroPower's rights and welfare." (D.I. 6 at ¶ 92.) Whether the facts alleged by Plaintiff ultimately amount to gross negligence is a fact question which cannot be resolved by the Court on a motion to dismiss. Midland Red Oak Realty, 2005 WL 445710 at *4. Accordingly, the Court concludes that Defendant is not entitled to the dismissal of Plaintiff's claims for gross negligence and punitive damages.

    E.    <u>Whether The Amended Complaint Sufficiently Alleges A Claim For Unjust Enrichment And Equitable Subordination</u>

By its Motion, Defendant contends that Plaintiff's claim for unjust enrichment must be dismissed, because the Amended Complaint alleges the existence of an express contract. Unjust enrichment has been defined as the "'unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity or good conscience.'" Bakerman v. Sidney Frank Importing Co., 2006 WL 2987020, * 18 (Del. Ch. Oct. 10, 2006) (quoting Jackson Nat'l Life Ins. Co. v. Kennedy, 741 A.2d 377, 393 (Del. Ch. 1999)). Claims for unjust enrichment must be dismissed when the complaint alleges that an express, enforceable contract controls the parties' relationship; however, even the case law cited by Defendant acknowledges that "claims of unjust enrichment may survive a motion to dismiss when the validity of

14

the contract is in doubt or uncertain." Id. at * 18. Alternative pleading is also available when there is doubt as to the enforceability or meaning of the terms of the contract. Breakaway Solutions, Inc. v. Morgan Stanley & Co., Inc., 2004 WL 1949300, *14 (Del. Ch. Aug. 27, 2004).

Although Plaintiff has alleged the existence of express contracts, it appears to the Court that there is at least some dispute concerning the scope and meaning of those contracts, particularly with regard to the duties Defendant owed to AstroPower. In light of this apparent disagreement and given the early stage of the proceedings, the Court will allow Plaintiff to proceed on its claim of unjust enrichment as an alternative theory of recovery to Plaintiff's breach of contract claim.

As for Plaintiff's claim for equitable subordination, Defendant reiterates the causation arguments it made in the context of Plaintiff's breach of contract and professional negligence claims. Because the Court has concluded that Plaintiff's Amended Complaint adequately alleges causation so as to withstand dismissal under Rule 12(b)(6), the Court will deny Defendant's Motion to the extent that it seeks dismissal of Plaintiff's equitable subordination claim.

IV. **CONCLUSION**

For the reasons discussed, the Court will deny Defendant's Motion To Dismiss.

An appropriate Order will be entered.

15